CASE 72—PETITION ORDINARY—JUNE 13.

American Accident Company of Louisville

v. Carson.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. ACCIDENT INSURANCE—EXTERNAL, VIOLENT AND ACCIDENTAL MEANS.—Under an accident policy insuring one against injuries effected through "external, violent and accidental means," if, as to the person injured, the injury was unforeseen, unexpected, not brought about through his agency, designedly, or was without his foresight, or was a casualty or mishap not intended to befall him, then the occurrence is accidental, and the injury one inflicted by accidental means within the meaning of the policy.

2. SAME.—Where such a policy insures against death or injury by "external, violent and accidental means," and there is a provision that it shall not "extend to or cover intentional injuries inflicted by the insured or any other person," the exception refers only to non-fatal injuries so inflicted.

3. ACCIDENT INSURANCE—PLEADING.—When an accident policy provides that if the insured is injured or killed in any occupation or

exposure, classed by the company as more hazardous than that recited in the application, the insured or his beneficiary is only to get a reduced sum, in an action by the beneficiary on the policy for the full amount thereof, he must allege that the insured was not killed while engaged in an occupation more hazardous than that stated in the application.

O'NEAL, PHELPS, PRYOR & SELLIGMAN AND BULLITT & SHEILD FOR APPELLANT.

No brief in the record.

R. C. WARREN, M. C. SAUFLEY AND W. G. WELCH FOR APPELLEE.

1. In the absence in this court of the evidence introduced in the lower court by the appellant to sustain its defense, the presumption must prevail that the peremptory instruction to find for plaintiff in the lower court was proper.

2. Where one, by the act of another, received an injury which he has no agency in bringing on himself, and which was not foreseen by him, from which death results, it is a death through external, violent and accidental means. (Hutchcraft's Ex'or v. Traveler's Ins. Co., 87 Ky., 300; Amer. Accident Co. v. Reigart, decided in 1893.)

3. The condition that "this insurance does not extend to or cover intentional injuries inflicted by the insured or any other person" refers wholly and only to injuries which do not result in death. The language used in the policy under consideration in the Hutchcraft case was "death or injury," while in this case it is only "injuries."

4. When an agent, authorized by his company to take applications for insurance, without the knowledge of the applicant, writes false answers, or fails to write the whole truth as stated by the applicant, the company will be estopped by the answers thus written by its agent, and the knowledge of the agent will be treated as the knowledge of the company. (Rowley v. Emp. Ins. Co., 36 N. J., 550; Plumb v. Cattaraugus Co. M. Ins. Co., 18 N. Y., 392; Ins. Co. v. Wilkerson, 13 Wall, 222; New Jersey M. L. Ins. Co., v. Baker, 94 U. S., 610; May on Insurance, sec. 143, page 161; Hartford Ins. Co. v. Haas, 87 Ky., 538; Mutual Benefit Life Ins. Co. v. Daviess' Exor., 87 Ky., 548; Hartford Life & Annuity Ins. Co. v. Hayden's Admr., Ky. Law Rep. of June, 1890; Wright's Admr. v. N. W. Mutual Life Ins. Co., Ky. Law Rep of May, 1891.)

D. W. SANDERS OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In April, 1891, the appellant company, in consideration of certain agreements, statements and warranties made in the application of one Stephen M. Carson, and the sum of seven dollars issued to him under "division A," wherein Carson's occupation was described as that of a druggist, a policy of insurance, known as an "accident policy," by which, for the term of three months, the applicant was insured against bodily injuries effected through "external, violent, and accidental means," (1) which wholly disabled him; 2) such injuries as partially disabled him; (3) such as resulted in the loss of an eye; (4) loss of a hand or foot, and lastly loss of both hands or feet, etc., in which event the full principal sum of five thousand dollars was to be paid to the insured, if he survived, or if he died then to his father. A. Carson, the appellee here.

In the body of the policy it was provided that if the insured was injured or killed in any occupation or exposure classed by the company as more hazardous than that recited in the application, the insured or his beneficiary should be entitled to only such sums as are named in the division so classed as more hazardous. And on the back of the policy, among many other conditions under which the policy was issued we find the following:   "This insurance does not cover disappearances nor suicide while sane or insane, nor injuries, whether fatal or otherwise, of which there is no visible mark upon the body, nor accidental injuries or death resulting from or caused directly or indirectly, wholly or in part, by hernia, fits,  . . .  nor extend to or cover intentional injuries inflicted by the insured or any other person  or in-

jury or death happening while the insured is insane or under the influence of intoxicating drinks or narcotics," etc.

It appears that the insured met his death in May, 1891, and under circumstances to be presently considered. The company denying any liability, the beneficiary, A. Carson, brought this action in the Jefferson Circuit Court for the principal sum indicated in the policy, and upon peremptory instructions, at the conclusion of the testimony, a verdict was rendered in his favor. From the judgment thereon the company appeals.

After certain preliminary statements the petition avers that "on the 8th day of May, 1891, and before the said term of insurance had expired, the said Stewart M. Carson was shot through the body by a ball from a gun or pistol, and thereby instantly and intentionally killed by one Jesse Burton, in the vicinity of Branford, in the county of said Carson's residence, in the State of Florida;" that "the said shooting and killing by the said Jesse Burton was not done in a mutual affray, was not provoked by any misconduct on the part of said Carson, and was not foreseen by him in time to have been avoided, but was wanton, causeless, unprovoked and unexpected by him."

It is evident, and it is so argued, that the pleader's object in setting out the fact that the insured came to his death by a shot fired through his body intentionally by another, thus anticipating the probable defense, was to provoke a demurrer, and thus present fairly to the court for construction the meaning of the words, "nor extend to or cover intentional injuries, inflicted by the insured or any other person," found on the back of the policy, and, therefore, not necessary to be adverted to in declaring on the contract. The expected demurrer was filed and overruled, and thus is presented for

American Accident Company of Louisville v. Carson.

our consideration two questions: First, were the "means" producing the death of the insured "external, violent and accidental?" And second, was the death of the insured "an intentional injury inflicted by another" within the meaning of the policy.

On the first point little need be said. While our preconceived notions of the term "accident" would hardly lead us to speak of the intentional killing of a person as an "accidental" killing, yet no doubt can now remain, in view of the precedents established by all the courts that the word "intentional" refers alone to the person inflicting the injury, and if as to the person injured the injury was unforeseen, unexpected, not brought about through his agency designedly, or was without his foresight or was a casualty or mishap not intended to befall him, then the occurrence was accidental, and the injury one inflicted by accidental means within the meaning of such policies.

Thus where one was waylaid and assassinated for the purpose of robbery his death was held to have been caused through "external, violent, and accidental means." Hutchcraft's ex'or v. Traveler's Ins. Co., 87 Ky., 300.)

So death by hanging at the hands of a mob was held to be an accident within the meaning of a policy against injuries through "external, violent and accidental means." (Fidelity & Casualty Co. v. Johnson, 30 L. R. A., 206, — Miss.)

So the death of a person who is shot by one whom he is trying to eject by force from a hotel office is a death by accident and "not a risk voluntarily assumed, where he makes the attempt without knowing that the other person is armed." (Lovelace v. Traveler's Protective Association. 126 Mo., 104.)

See also numerous authorities to the same effect in notes to case last cited in 30 L. R. A., 207.

In the Hutchcraft case, however, and in others cited, a re-covery was denied, because while the killings were acci-dental within the meaning of the words, "external, violent and accidental," as used on the face of the policy, yet certain conditions or provisos protected the company against loss where "the death or injury may have been caused by inten-tional injuries inflicted by the insured or any other person."

And a consideration of this feature brings us to the second question presented by the demurrer.

In the cases to which our attention has been called, involv-ing accident policies in many different companies, it is noticeable in all that the form of the usual protecting pro-viso against loss from "intentional injuries" is somewhat different from the corresponding clause in the policy before us. The clause in the Hutchcraft case—Traveler's Ins. Co.—will illustrate this. It is as follows: "And no claim shall be made under this ticket, when the *death* or *injury* may have been caused . . .by intentional injuries inflicted by the insured or any other person."

This is not merely protection against *injuries* so inflicted but against *death* as well. In express terms that policy excepts *death* from intentional injuries inflicted by any other person, and does not content itself with providing merely that no claim shall be made when the *injury* may have been intentionally inflicted. The language is "death or injury," and the policy protects against either death or injury when caused by intentional injuries inflicted by the insured or any other person. In the present case, as we have seen, the pol-icy is not to extend to or cover intentional *injuries* inflicted by the insured or any other person. Here we find a differ-ence between the policy under consideration and all others we have examined. The words "death or injury" are used

in all of them, and, indeed, in this policy we find those words separated for the first time in the clause under discussion. We find it provided in the preceding clause that the policy does not cover acidental *injuries or death*, resulting from hernia, etc., and immediately succeeding the clause in dispute the language is, "or injury or death happening while the insured is insane," etc.　We notice, too, that the policy is not to cover injuries *whether fatal or otherwise*, of which there are no visible marks upon the body, and it appears well settled that this exception, without the words "fatal or otherwise," has reference only to cases of bodily injury which do not result fatally—that is, the word "injury" is used in its usual sense as implying a hurt not resulting in death.　(McGlinchey v. Fidelity, &c., Co., 80 Me., 251.)

The words "injury or death," and "injured or killed," are used in this policy some eight times or more, and seemingly in sharp contrast, and the significant omission of the word "death" in this particular clause requires us to hold that the exception referred only to non-fatal injuries intentionally inflicted by the insured or any other person.

We conclude, therefore, that the petition stated a good cause of action so far as the points discussed are concerned. It is insisted, however, that as the plaintiff sued for the full principal sum of five thousand dollars he ought to have negatived the conditions stated in the face of the policy under which, if they existed, that sum must have been reduced and the policy scaled.

The insured agreed that if he was killed in any occupation or exposure classed by the company as more hazardous than that of druggist his beneficiary was to get only a reduced sum, and it seems evident that his beneficiary must allege, if he can truthfully do so, that the insured was not so killed.

else the court could not render judgment for the sum to which the policy under its terms entitled him.

The policy was made part of the petition and forms the basis of the action. The claimant must bring himself within its terms and conditions as stated on its very face.

It can not be said that this should come from his adversary. Whether the insured was engaged at the time of his death in a more hazardous occupation or exposure than that of a druggist was peculiarly within the knowledge of the insured and his beneficiary, who must be held to a general knowledge of the divisions and classifications of risks, and to have acted intelligently in accepting insurance in "division A."

Of course if the true issue is in fact made, it does not matter from whom the exceptional matter comes, and it is true that the company pleaded that the insured was killed while acting as deputy sheriff, and attempted to plead that he was insured as a druggist or dealer and not otherwise, but just what its pleas would have been, had the plaintiff been required to set up its cause of action according to the terms of the contract, we do not know, and, convinced of this error occurring at the inception of the proceedings, no other questions need be considered.

Judgment reversed for further proceedings consistent with this opinion.