# Interstate Business Men's Accident Association v. Ford.

(Decided November 19, 1914.)

## Appeal from Franklin Circuit Court.

1. Insurance—Suicide Will Not Be Presumed.—The law does not presume suicide and a recovery will be sustained where the facts indicate that the deceased did not intentionally take his own life.
2. Insurance—Accident.—When a man is killed by another and the occurrence is as to him unforeseen and not through his agency, it is an injury by accidental means.
3. Insurance—Assessment—Refusal to Make.—An assessment company denying all liability on a policy, its denial of liability is a refusal to make an assessment and warrants a personal judgment against it.

J. C. W. BECKHAM, DALLAM, FARNSLEY & MEANS and R. M. HAINES for appellant.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

The Interstate Business Men's Accident Association issued to Gale Ford a policy insuring him in the sum of $5,000 against death resulting from bodily injuries effected solely by external violent and accidental means. This action was brought by his widow, Edith M. Ford, the beneficiary in the policy, to recover upon it. The defendant denied that Gale Ford came to his death by reason of bodily injuries effected solely by external violent and accidental means. On the trial of the case before a jury these facts appeared.

Gale Ford resided at Dixon Springs, Tennessee; he was the cashier of a bank there; he owed the bank $6,000.00 and had permitted one Beasley to overdraw his account $3.900.00. The bank was in straitened condition and Ford wanted $7,500.00 to pay into the bank to keep it going and was planning to go to Louisville to get the money. He told a lady who lived there what he wanted, and she offered to lend him the money, but he said he would rather get it from his friends in Louisville. He left Dixon Springs for Louisville, saying he was going there to get the money. He reached the Old Inn, Louisville, about two o'clock in the morning of August 28th; he knew the hotel people well, and when he got there he gave his watch to the night clerk, telling him he had broken it and asking him to have it repaired for him. He was assigned to a room and came down the next day and after some talking with the day clerk of the hotel, telephoned to the residence of R. H. Alexander, who was one of the friends from whom he expected to get the money. Mrs. Alexander told him that her husband was not at home, but was up the Kentucky River, and would be back on the boat that afternoon. He told Mrs. Alexander that he would meet the boat and see Mr. Alexander. He was apparently in perfect health, and in good spirits, laughing and talking as he usually did. He left the hotel about two o'clock, leaving his baggage in his room, and so far as the evidence shows, was never afterwards seen alive.

Mr. Alexander did not come home on the boat, but took the train at Worthville and came in on it. On August 31st Ford's body was found in the Ohio River in about two inches of water near Goose Island, by two fishermen. A lot of papers, a scarf pin, some cuff but-

tons and shirt buttons were found on his person. About two feet of water had been over that part of the river two or three days before. The fishermen had been, within fifty feet of where the body was found the day before, and saw nothing of it. There was a cut about two inches long on the top of his head, extending down over the right eye. One cuff of his shirt was partly torn off; there were several bruises on the head which were such as could not have been received in striking the rocks while in the river; the shirt collar was open; the remaining cuff was open with the button hanging on one side and his clothing was badly mussed.

The Kentucky River boat was late in getting in on the evening of August 28th. It landed at the wharf at the foot of Third street; the entrance of the Canal is at Sixth street; the dam extends across the river from the mouth of the Canal. The bridge is at Fourteenth street. The body was found below the bridge and near the Indiana shore. The circumstances indicated that he could not have fallen in the river above the dam, and if he had fallen off the bridge he would have been carried further down the river.

On these facts the jury found for the plaintiff; the court entered judgment on the verdict and the defendant's motion for new trial having been overruled, appeals.

The defendant insists that the proof points as strongly to a death by suicide as to bodily injuries effected solely by external violent and accidental means, and that it is not liable under the policy for death by suicide; but we cannot concur in this. Ford, when last seen, was in perfect health, was in good spirits, laughing and talking as usual. While he was financially embarrassed, he owned, among other things, a farm worth $15,000.00, and had declined the offer of his friend at Dixon Springs to lend him the money he needed, saying that he would prefer to get it from his friends in Louisville. All his actions in Louisville were consistent with this declaration, indicating no doubt on his part of getting the money there. He left the hotel to meet Alexander at the boat, and expected to get the money from Alexander. Alexander did not come on the boat; the boat was late and what happened to Ford no one can tell; but the law does not presume suicide, and neither the circumstances nor the condition of his body when found, indicate that he intentionally killed himself. He

may have received a fall in some way and thus received the injuries shown upon his person, or it may be that he was knocked down and robbed and his body put into the water near Goose Island by his murderers. No pocketbook seems to have been found on his person, but only a few papers which a thief would not care to take. His watch was at the jeweler's and had not been returned to him. In Hutchcraft's Executor v. Insurance Company, 87 Ky., 300, Hutchcraft was assassinated and it was there held as the assassination was as to him an unforeseen event, his death was through external violent and accidental means. The same ruling was made in Campbell v. Fidelity & Casualty Co., 109 Ky., 661, where Campbell was shot by another. To same effect is Aetna Life Insurance Co. v. Rustin, 151 Ky., 103.

By the terms of the contract the beneficiary was to receive the proceeds of one assessment of $2.00 on each member in good standing, not to exceed the sum of $5,000.00. It is insisted that an action at law cannot be maintained on the contract and that the plaintiff's remedy was in equity to compel the making of an assessment. The defendant moved the court to transfer the action to equity; this the court refused to do and of this the defendant complains. The defendant is an Iowa corporation, it denied all liability, and it neither pleaded nor proved that it was willing to make an assessment or that the proceeds of an assessment would not be as much as $5,000.00. It was its duty to make an assessment to pay the claim, if just; its denial of all liability was a refusal to make an assessment. The refusal of the corporation to make an assessment, nothing more appearing, warranted the personal judgment against it. The real issue between the parties has been fairly tried. This objection is without merit. By section 134 of the Code no judgment may be reversed for any error not affecting the substantial rights of the party complaining.

Judgment affirmed.