### Davis v. Massachusetts Protective Association.

(Decided February 14, 1928.)

(Rehearing Denied, with Modification, April 13, 1928.)

### Appeal from Greenup Circuit Court.

1.  Insurance.—Accident insurance company may limit its liability by providing specifically against liability if injury is caused by intentional act of insured or other person.

2.  Insurance.—Where accident insurance policy insured against loss from bodily injuries effected directly and independently of all other causes by accidental means, and due solely to external, violent and involuntary causes directed verdict for insurer held error; question whether shooting of insured by a third person while in a fight was accidental being for jury under evidence.

3.  Insurance.—In view of insurer exempting itself from liability on account of death due to disease or sustained as result of participation in aviation or by surgical treatment, clause therein exempting insurer from liability where insured was engaged in rioting, fighting, or strikes did not exempt insurer for insured's death while fighting, since omission of word "death" therein showed that injuries received from fighting referred to nonfatal injuries.

S. S. WILLIS for appellant.

BRUCE & BULLITT and JOHN E. TARRANT for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On November 19, 1921, the appellee issued to one Hager R. Davis a policy insuring him against loss resulting from bodily injuries effected directly and inde-

pendently of all other causes by accidental means, and due solely to external, violent, and involuntary causes. The indemnity was fixed at a certain sum for total disability, a certain sum for partial disability, a certain sum for specific losses, and a certain sum for accidental death. Each of these terms was defined by the policy itself. While the policy was in full force and effect, Hager R. Davis was shot and killed on May 20, 1925. The appellant is the widow of Hager R. Davis, and beneficiary under the policy. In case of injury resulting in the death of the insured, the policy provides that the amount due thereunder shall be $25 a week for a period of 104 weeks, or a total sum of $2,600. The appellee declined to recognize any liability to appellant by reason of the death of her husband; whereupon she instituted this suit. At the conclusion of the evidence, the lower court instructed the jury to return a verdict in favor of appellee.

The facts show that Davis and his wife were estranged at the time of his death, and there had been ill feeling between Davis and one Bennett, who killed him. On the day he was killed, he and Bennett met on the streets of Fullerton, and there was a dispute over something Davis had said and a scuffle over a pistol in the possession of Bennett. Davis was unarmed. The testimony shows that Davis struck Bennett, and thereafter they grappled, and while they were engaged in the struggle the pistol which Bennett had was discharged, and Davis was fatally wounded. He died within three or four hours thereafter.

It is insisted by appellee that the act resulting in the death of Davis was not an accident within the meaning of the policy. The policy insures against accidents growing out of involuntary causes, and it is argued that Bennett voluntarily shot Davis and for that reason his death was not the result of an accident as defined in the policy.

Another contention made by appellee is that there is a provision in the policy which excludes injuries received while insured is engaged in fighting. It is insisted that he was engaged in a fight at the time he was shot, and that, because of the provision in the policy excluding injuries received by insured while he was engaged in fighting, no right of recovery exists. These two points embrace the entire defense of appellee, although another

point is mentioned in its brief, which is that the injury was not due solely to involuntary causes. That is included, however, in the contention that the injury was not accidental within the meaning of the policy.

An examination of the authorities in this state is necessary. The first case which has been called to our attention is that of Hutchcraft's Ex'r v. Travelers' Insurance Co., 87 Ky. 300, 8 S. W. 570, 10 Ky. Law Rep. 260, 12 Am. Stat. Rep. 484. Hutchcraft had been waylaid and assassinated for the purpose of robbery. The insurance company made two defenses—one that, if Hutchcraft was killed by intentional means, his death was not accidental within the meaning of the terms of the policy which insured him against death "through external, violent, and accidental means"; and the other that the terms of the policy expressly exempted the insurance company from liability in case Hutchcraft should come to his death through injuries intentionally inflicted by another person. As to the first defense, this court held against the insurance company, and in so doing carefully defined the meaning of the term "accidental means." In concluding its careful reasonings the court said:

"In other words, we do not regard it as essential, in order to make out a case of injury by 'accidental means,' so far as the injured party is concerned, that the party injuring him should not have meant to do so; for, if the injured party had no agency in bringing the injury on himself, and to him it was unforeseen—a casualty—it seems clear that the fact that the deed was willfully directed against him would not militate against the proposition that, as to him, the injury was brought on by 'accidental means.' "

Another case, in point is that of American Accident Co. of Louisville v. Carson, 99 Ky. 441, 36 S. W. 169, 18 Ky. Law Rep. 308, 34 L. R. A. 302, 59 Am. Stat. Rep. 473. Carson was shot and killed, as alleged in the petition in that case, not in a mutual affray, and that the killing was not provoked by any misconduct on the part of Carson and was not foreseen by him in time to have been avoided. The court was called upon to determine whether the means producing the death of the insured were "external, violent, and accidental," and also

whether the death of insured was "an intentional injury inflicted by another" within the meaning of the policy. The court, in passing on these questions, said:

> "On the first point little need be said.    While our preconceived notions of the term 'accident' would hardly lead us to speak of the intentional killing of a person as an 'accidental' killing, yet no doubt can now remain, in view of the precedents established by all the courts, that the word 'intentional' refers alone to the person inflicting the injury, and if, as to the person injured, the injury was unforeseen, unexpected, not brought about through his agency designedly, or was without his foresight, or was a casualty or mishap not intended to befall him, then the occurrence was accidental, and the injury one inflicted by accidental means within the meaning of such policies."

The case of Campbell v. Fidelity & Casualty Co. of New York; 109 Ky. 661, 60 S. W. 492, 22 Ky. Law Rep. 1295, is another case where this court was called upon to construe the terms of a policy against accidental death where the insured was shot and killed.   One of the defenses made by the insurance company in that case was that the shot was not accidental but intentional, and was fired by the man who killed insured in his necessary self-defense.   He was killed while engaged in an affray with a policeman.   We do not think the opinion in that case departs from the principles announced in the two cases above cited.   It goes a little further in holding against the contention of the insurance company than the other two opinions.

Ætna Life Insurance Co. v. Rustin, 151 Ky. 103, 151 S. W. 366, is another case where this court was called upon to construe the terms of a policy against accidental death.   In that case the lower court gave an instruction in these words:

> "If the jury believe from the evidence that the wound which caused the death of Frederick Rustin was inflicted accidently, either by himself or by another, or that it was inflicted intentionally by another without the consent or procurement of Frederick Rustin, then the law is for the plaintiff."

This court approved that instruction.   In that case Rustin was found dead on his porch with a gunshot wound in the abdomen.

The case of Interstate Business Men's Accident Association v. Ford, 161 Ky. 163, 170 S. W. 525, was another case where the question to be determined was whether Ford came to his death as the result of external, violent, and accidental means. In that case the court followed the cases of Hutchcraft's Ex'r v. Travelers' Insurance Co., supra. Campbell v. Fidelity & Casualty Co. of New York, supra, and Ætna Life Insurance Co. v. Rustin, supra.

Bryant's Adm'r v. Kentucky Central Life & Accident Insurance Co., 216 Ky. 806, 288 S. W. 312, is another case relating to the matter under consideration. In that case Bryant was found on a shanty boat, where he lived, in an unconscious condition, his body covered with bruises and contusions. The room was in disorder, showing that he had been violently assaulted, probably for the purpose of robbery. He died shortly after he was found, and, when suit was instituted to recover for his accidental death, the insurance company. defended on the ground that his death was not the result of external, violent, and accidental means. There was another provision in the policy which forbade recovery if the injury resulting in death was intentionally inflicted upon the insured by any other sane or insane person. In that case the court held that Bryant was not insured against injuries intentionally inflicted upon him by any other sane or insane person, or while fighting or violating any law. The court held that the circumstances and facts presented to the jury were sufficient to show that the wounds received by Bryant were intentionally inflicted by another person, and, because of the evidence so showing, the court held that there could be no recovery.

The last case we have been able to find on the question is that of Smith v. Federal Life Insurance Co., 219 Ky. 56, 292 S. W. 470. That policy also contained a specific provision exempting the company from liability if the disability resulted from intentional injury inflicted by himself or any other person. The court upheld the provision of the policy, basing the opinion on the Hutchcraft case, supra. The policy under consideration in the Hutchcraft case also had a specific provision exempting the company from liability if the injury was the result of the intentional act of some person inflicting it.

It would appear, therefore, that an insurance company may limit its liability by providing specifically against liability in the event the injury is caused by the

intentional act of the insured or by any other person. However, the intentional act of some other person in inflicting the injury does not take the injury out of the class of injuries effected directly by external, violent, or accidental means, without a specific exemption from such liability. The policy in this case allows an indemnity if the loss results from bodily injury effected directly and independently of all other causes by "accidental means," and due solely "to external, violent, and involuntary causes." The evidence in this case made it a question for the jury as to whether Davis was killed accidentally by Bennett, either because the pistol was unintentionally discharged by Bennett, or because there was no agency on the part of Davis in bringing the injury upon himself.

The appellee relies on the provision in the policy exempting it from liability if the insured was injured while fighting. Appellant insists that the provision against liability for injury inflicted while fighting does not relate to fatal injuries but relates only to nonfatal injuries. In making this contention she relies on the case of American Accident Co. of Louisville v. Carson, supra, and Interstate Business Men's Accident Association v. Dunn, 178 Ky. 193, 198 S. W. 727, 6 A. L. R. 1333. Both of these cases were well considered by this court, as shown by the careful reasoning found in the opinions. The later case approves and elaborates the doctrine announced in the former. After pointing out in their brief the basis of the opinion in the Carson case, counsel for appellee say "there is no such sharp distinction between 'injuries' and 'death' in our policy." If we find there is such a sharp distinction as counsel for appellee say does not exist, it would be persuasive that they recognize the soundness of the contention of counsel for appellant. The provision of the policy against liability for injuries received while engaged in fighting is in this language "or for any benefit hereunder where the insured is injured while engaged in rioting, fighting, or strikes."

In the first line of that printed paragraph in the policy we find that the company is exempted from liability on account of *death* due to disease, whether acquired accidentally or otherwise "or *death or injuries* sustained as the result of participation in aviation. . . ." Immediately after the provision against fighting, there is a provision against liability for *death* caused by surgical treatment. Following that is a specific provision that the policy does not 'insure com-

batants or noncombatants against *injuries fatal or non-fatal*," while engaged in military service. Following that is another provision that the policy shall not "cover *death or disability* resulting from injuries sustained by any means in any country, while engaged in military service. . . . " Under another clause of the policy there is a provision for certain indemnities which "shall not apply to weekly indemnities payable for *death or specific losses*. In another paragraph of the same portion of the policy is a provision that "indemnities shall not be payable for any *death or disability* which shall be caused by accident. . . . " It will be seen that appellant, in the preparation of its policy, under the heading "Additional Agreements," refers to *death* separately a number of times, it refers to injuries *fatal or nonfatal, death or disability, death or specific losses,* until the sharp distinctions between this policy and the policy under consideration in the Carson case entirely disappear. The reasoning of the court in the Dunn case, supra, is unanswerable and there is no way to distinguish this case from the Carson case and the Dunn case. If the appellee had in mind exemption from liability for injuries or death caused by fighting, it should have included after the word *"injured"* the words *"or killed."* The omission of these words shows that the injuries received as the result of fighting referred to nonfatal injuries. The lower court therefore erred in taking the case away from the jury. If the evidence is substantially the same on another trial, the court will instruct the jury as follows:

The jury will find for the plaintiff the amount sued for, unless they shall believe from the evidence that Davis assaulted Bennett, not in his necessary or to him apparently necessary self-defense, and shall further believe from the evidence, at the time of such assault, if any, Davis realized that such assault, if any, would be dangerous to him (Davis), and with such knowledge voluntarily made the assault, if any, which exposed him to the danger, in which event they will find for the defendant, unless they shall further believe from the evidence that the pistol was not intentionally discharged by Bennett during the fight, in which latter event they will find for the plaintiff, although they may believe from the evidence that Davis assaulted Bennett, not in his necessary or to him apparently necessary self-defense, and realizing that such assault would be dangerous to him (Davis) at the time.

Judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting except Judge Willis.