## Kentucky Central Life & Accident Insurance Company v. Harper.

(Decided June 14, 1929.)

L. B. ALEXANDER and PETER, LEE, TABB, KRIEGER & HEYBURN for appellant.

C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

On December 5, 1927, appellant issued to Emery Harper what is known as its XX policy, whereby it agreed, in event of the death of the insured "resulting directly and independently of all other causes through external, violent and accidental means, provided death of the insurred occurred within ninety days from the date of the accident," to pay his wife, the beneficiary named in the policy, the sum of $1,000. While the policy was in full force and effect, Emery Harper was shot and killed March 4, 1928, by a negro named Clifton Centers. Proof of the death of Harper was presented to appellants, and it tendered to appellee the sum of $100 as the amount of its liability under, and as full satisfaction of, the policy. She declined to accept that sum and instituted this action, which resulted in a verdict and judgment in her favor for the sum of $1,000. The company has appealed.

Emery Harper and Joe Hamilton were walking along Jones street in Paducah when they met Clifton Centers, with whom Hamilton had previously had some trouble; when he met Harper and Hamilton, Centers pulled a pistol from his pocket; Hamilton jumped behind Harper, or pulled Harper in front of him, just as Centers' pistol fired. The shot struck and killed Harper. It was insisted by appellant on the trial, and such is the defense set up in its answer, that Harper died from gunshot wounds intentionally inflicted upon him by Clifton Centers; that the wound so inflicted upon him was the direct and proximate cause of his death, and for that reason it was not liable under the policy except to the extent of $100, under clause 4 of the policy, which provides that, if death results from an injury not otherwise covered by the accidental death indemnity, the insurer will pay the beneficiary that sum.

There was testimony by one witness to the effect that Harper attempted to act as peacemaker between Centers and Hamilton, and that Centers said to Harper at the time of the shooting, "I will shoot you, too." The court submitted to the jury, for it to determine, whether the killing of Harper was intentional or accidental. The jury found that it was accidental, and that finding is not questioned on this appeal. In fact, appellant in its orig-

inal brief says: "Since the jury found from the evidence for appellee and against appellant's contention that the injury resulting in the death of Harper was intentionally inflicted, only one question is raised on this appeal, that being whether appellant is liable under said policy for injuries resulting from gunshot wounds." ·

However, we think the question correctly stated is whether appellant is liable under the policy because of the death of the insured from gunshot wounds. The action is to recover on account of the accidental death of the insured, and not for injuries resulting from gunshot wounds.

That the death of Harper, under the facts and circumstances proven, was "accidental" within the terms of the policy, is no longer open to question in this jurisdiction. Hutchraft's Ex'r v. Travelers' Ins. Co., 87 Ky. 300, 8 S. W. 570, 10 Ky. Law Rep. 260, 12 Am. St. Rep. 484; American Accident Co. v. Carson, 99 Ky. 441, 36 S. W. 169, 18 Ky. Law Rep. 308, 34 L. R. A. 302, 59 Am. St. Rep. 473; Davis v. Massachusetts Protective Association, 223 Ky. 626, 4 S. W. (2d) 398.

Appellant was therefore entitled to recover the full amount of the policy, unless it be that accidental death resulting from a gunshot wound is excepted from the policy under clause 6 thereof, which reads as follows: "No indemnity will be paid for Accidental Death, Dismemberment, Loss of Sight, or Disability, resulting from Venereal diseases nor for injuries fatal or non-fatal, sustained while trespassing on the Right-of-way of any railroad not provided for the exclusive use of passengers, nor for Gun Shot Wounds or Stabs, nor for injuries that are intentionally self-inflicted or intentionally inflicted upon the insured by any other person, sane or insane, or sustained by the insured in War or Riots, or while engaged in Mining, Motor or Horse Racing Contests, making or handling Dynamite or Nitroglycerine, Aerial or Submarine Navigation, Breaking or Switching on Railroads; nor at a time when the insured is delirious or under the influence of any narcotic or intoxicant; or while fighting or violating any law; or for any Poison taken internally or Alcoholism in any form. Bites or Stings of Insects, Ptomaines, Fits, Vertigo, Cerebral Hemorrhage, Orchitis, Hernia, Sunstroke, Overheat, Freezing, Erysipelas, Tetanus, Blood Poison or septic Infection, shall be classed as illness hereunder and the indemnity

for such illness, fatal or otherwise shall be paid only under the illness provision of this policy.''

Appellant insists that the clause, when ''dissected and placed together according to its plain meaning and purpose,'' would read and should be construed as follows: ''No indemnity will be paid for accidental death, dismemberment, loss of sight, or disability resulting from venereal diseases. No indemnity will be paid for accidental death, dismemberment, loss of sight or disability resulting from injuries fatal or non-fatal sustained while trespassing on the right-of-way of any railroad not provided for the exclusive use of passengers. No indemnity will be paid for accidental death, dismemberment, loss of sight or disability resulting from gunshot wounds or stabs. No indemnity will be paid for accidental death, dismemberment, loss of sight or disability resulting from injuries that are intentionally self-inflicted or intentionally inflicted upon the insured by any other person.''

A similar contention was made in the case of Interstate Business Men's Accident Ass'n v. Dunn, 178 Ky. 193, 198 S. W. 727, 6 A. L. R. 1333. In that case the policy provided that the insurance ''shall not extend to or cover any loss due to the act of any person done to injure the insured.'' It was contended that the word ''injure'' includes the word ''kill,'' and that the exemption clause should be so construed as to read that the insurance ''shall not extend to or cover any loss due to the act of any person done to injure or kill the insured.'' In rejecting that contention the court said:

> ''Does the word 'injure,' in the connection in which it was used in this exemption clause, cover and include the word 'death'? If it does, the judgment should be reversed; otherwise it should be affirmed. Just why there was not inserted in this part of the exemption clause now under consideration the words 'to kill' after the words 'to injure,' we do not of course know, . . . but it cannot be assumed that the omission of these words was by inadvertance or mistake. . . .

> ''The word injure is not a technical word. It is in common use, has a popular and well understood meaning, and from the context we take it for granted it was intended to have its popular meaning in this contract. It is defined by Webster as meaning 'To

do harm to; to hurt; to damage, as to hurt or wound.'
See also 16 A. & E. Ency. of Law, page 499; 22 Cyc
page 1062. And this is its commonly understood
meaning in ordinary usage. It is not referable to
nor is it used in describing fatal injuries, but is
customarily confined to injuries that are not fatal.
For example, if a man is shot and killed instantly,
we would not say that he was injured but that he was
killed. But if he was merely wounded, we would not,
of course, say that he was killed, but that he was in-
jured or wounded. If a man should fall from the top
of a house and die instantly, no person would say, in
speaking of the accident that he fell from the top of
the house and was injured. They would say that he
fell from the top of the house and was killed. But
if he was not killed, it would be said that he fell from
the top of the house and was injured.''

The clause in question provides the conditions under
and for which the insurer shall not be liable. These con-
ditions are set forth in four prepositional phrases con-
nected by the conjunction ''nor.'' The use of this con-
junction indicates that the phrases by it connected are of
equal rank and independent of, as well as wholly discon-
nected from, each other. This is illustrated by the fol-
lowing arrangement of the clause:

No indemnity will be paid —

for accidental death, dismemberment, loss of sight, or disability, resulting from venereal diseases,

nor

for injuries fatal or nonfatal sustained while trespassing on the right-of-way of any railroad not provided for the exclusive use of passengers,

nor

for gunshot wounds or stabs,

nor

for injuries that are intentionally self-inflicted or intentionally inflicted upon the insured by any other person, sane or insane, or sustained by the insured in war or riots or while engaged in mining, motor or horse racing contests, making or handling dynamite or nitroglycerine, aerial or submarine navigation, breaking or switching on railroads; or at a time when the insured is desirous or under the influence of any narcotic or intoxicant; or while fighting or violating any law; or for any poison taken internally or alcoholism in any form.

The first one of the four phrases excepts from indemnity *accidental death, dismemberment, loss of sight or disability*, resulting from venereal diseases; the second phrase excepts from indemnity *injuries*, fatal or nonfatal, sustained while trespassing on a railroad right of way not provided for the exclusive use of passengers; the third phrase excepts from indemnity gun shot *wounds* or *stabs*; the fourth phrase excepts from indemnity *injuries* that are intentionally self-inflicted or intentionally inflicted upon the insured by another.

Accidental death is excepted from indemnity only when it results from venereal diseases, or is the result of a (fatal) injury sustained while trespassing on the right of way of a railroad not provided for the exclusive use of passengers.

The specific exception relied on by appellant, that no indemnity will be paid "for gunshot wounds or stabs," clearly refers to nonfatal injuries. Webster's New International Dictionary defines the word "wound" to mean "a hurt or injury caused by violence"; and defines the word "stab" as "a thrust of, or a wound given by, or as if by, a pointed weapon." Thus we have it, a stab is a wound, and a wound is an injury, and when it is provided that no indemnity will be paid "for gunshot wounds or stabs" the phrase can have but one meaning, and that is that no indemnity will be paid for an injury resulting from a gunshot wound or stab; or, in other words, that no indemnity will be paid for an injury inflicted upon the insured by shots from firearms or a knife or other pointed instrument.

If appellant, in drafting the policy sued on, had intended to exempt itself from liability for accidental death resulting from gunshot wounds or stabs, it is inconceivable why the words accidental death were omitted from the third phrase of the clause in question. It cannot be contended that such words were omitted by inadvertence or oversight. The omission of these words and the failure to include in the phrase any words other than "for gunshot wounds or stabs" shows that the exemption refers only to nonfatal injuries inflicted upon the insured by either of those means. Davis v. Massachusetts Protective Association, 223 Ky. 626, 4 S. W. (2d) 398.

These conclusions are not in conflict with the opinion in Bryant's Adm'r v. Kentucky Central Life & Accident Insurance Co., 216 Ky. 806, 228 S. W. 766. The policy

sued on in that case is unlike the policy in this case, and the exceptions therein provided are not the exceptions provided in the policy here sued on, as will be seen by a comparison of paragraphs 4 and 5 quoted in that opinion with the same numbered paragraphs, and paragraph 6 of the policy in this case. That case was determined upon the exception contained in paragraph 4 of Bryant's policy, which provided that *"accidental death* . . . shall not be payable for, or as a result of . . . injury that is self-inflicted, or intentionally inflicted upon the insured by any other sane or insane person . . . or while fighting or violating any law."

Perceiving no error in the judgment appealed from, it is affirmed.

The whole court sitting.