# Prudential Life Insurance Co. v. Overby's Adm'x.

(Decided Dec. 12, 1933.)

PENTECOST & DORSEY for appellant.
ODIE DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Prudential Life Insurance Company of America, for a stipulated paid premium, issued to William T. Overby a policy by which it agreed to pay his estate $265 on proof of his death; "if his death resulted through external, violent and accidental means," the further sum of $265.

On the 29th day of March, 1930, while the policy was in effect, Overby, was domiciled in the city of Henderson, Ky., where he was shot and killed with a pistol discharged into his body by another. The company, on proof of his death, paid $265 but refused to pay the further sum of $265, insisting that his death was not "through external, violent and accidental means." His administratrix filed this action to recover the $265, alleging that his death was caused through external, violent, and accidental means. The defense is a denial. On a trial before a jury a verdict of $265 was returned in favor of the administratrix.

The determinative question herein is a mixed one of law and fact.

Overby and Tom Baskett were engaged in a game of pool, about 6 p. m., in Mitchell's pool room. Dennis P. Rooney entered the pool room, sat down, and began to smoke, when an argument started between Overby and Baskett. Overby got out his knife, changed it from his right to his left hand, and struck Baskett with his open hand; Baskett went to a pool table, got a cue stick, and as he did this Rooney grabbed him by the arm, saying to him, "That is a poor way to settle trouble," and further remarked, "You go over and make friends with Overby." Baskett said he would do so, and went to Overby, patted him on the shoulder, and said, "You and I can make friends, and lets do that." Overby said, "All right." Rooney left, went to the head of the bar in front, saying to them, "Come up and be friends, and I will buy drinks for the house." Overby then came up by the pool table, the same way Baskett was going, and when within about forty feet of Rooney, announced to Rooney, "All right, you damn s—— of a b—— you gave me a dirty deal several years ago and we will settle it." At the time he made this statement he was going toward Rooney with an open knife in his hand. Rooney said to him, "Tom don't you come on me with that knife, I have been cut three or four times." He repeated the warning as Overby continued going toward him with the open knife still in his hand. He continued to go in the direction of Rooney, and as he came nearer, Rooney several times repeated his remark concerning the knife. When Overby got within four or five feet of him with his open knife, in the language of the witnesses, he made a "bull

run" at Rooney; Rooney "jumped back in a 'V' shape," and as Overby raised his arm and cut at him, he fired his pistol at him three times; the bullets entering the back from the side. At the time the shots were fired Overby had his arm up in the act of striking at Rooney with the knife. Rooney's recitation of the facts is not disputed by either party. The administratrix insists they show that the death of Overby was "through external, violent and accidental means," within the meaning of these terms as they are used in the policy. The Prudential Life Insurance Company contends they demonstrate that the death of Overby was not "through accidental means," as these words are defined in the policy. It admits that his death was the result of "external and violent," but not "accidental," means.

Whether Rooney intended or not to shoot and kill Overby is immaterial, for if the latter had no choice of bringing the injury on himself, then as to him it was unforseen—a casualty, and accidental. The fact that Rooney intentionally shot and killed him does not militate against the proposition that as to Overby the injury was brought about by accidental means. In American Accident Co. of Louisville v. Carson, 99 Ky. 441, 36 S. W. 169, 170, 18 Ky. Law Rep. 308, 34 L. R. A. 301, 59 Am. St. Rep. 473, when considering whether the act involved was the result of accidental means, we said:

"While our preconceived notions of the term 'accident' would hardly lead us to speak of the intentional killing of a person as an accidental killing, yet no doubt can now remain, in view of the precedents established by all the courts, that the word 'intentional' refers alone to the person inflicting the injury, and if, as to the person injured, the injury was unforseen, unexpected, not brought about through his agency designedly, or was without his forsight, or was a casualty or mishap not intended to befall him, then the occurrence was accidental, and the injury one inflicted by accidental means, within the meaning of such policies."

In Campbell v. Fidelity & Casualty Co. of New York, 109 Ky. 661, 60 S. W. 492, 494, 22 Ky. Law Rep. 1295, quoting from Travelers' Insurance Company v. Clark, 109 Ky. 350, 59 S. W. 7, 22 Ky. Law Rep. 902, 95 Am. St. Rep. 374, we reiterated the theory that, "'To

enable appellant [insurance company] to escape liability under the provision of the policy relied on, it is essential that it should show that the assured knew of and realized the danger' '' of the act causing his injury or death, '' 'and that with such knowledge he purposely and consciously exposed himself to such risk,' citing Miller v. Insurance Co., 92 Tenn. 167, 21 S. W. 39, 20 L. R. A. 765; Travelers' Insurance Co. v. Randolph, 24 C. C. A. 305, 78 F. 754; Burkhard v. Insurance Co., 102 Pa. 263 [48 Am. Rep. 205].'' Also see Davis v. Massachusetts Protective Ass'n, 223 Ky. 626, 4 S. W. (2d) 398, and Couch on Insurance, vol. 5, section 173.

It seems to be generally agreed by the courts and text-writers that where a policy of insurance provides for the payment of indemnity if the injury or death of the insured is intentionally inflicted upon him by another, it is in law sustained by accidental means, provided the insured had no part in bringing it upon himself, or ''is not the result of the misconduct or the participation of the injured party.'' Hutchcraft's Ex'r v. Travelers' Insurance Co., 87 Ky. 302, 8 S. W. 570, 571, 10 Ky. Law Rep. 260, 12 Am. St. Rep. 484.

It is not conceivable that Overby, in the circumstances disclosed by the eyewitnesses, had no choice in bringing upon himself his death at the hands of Rooney, or that the injury received thereby was unforseen, unexpected by him, or was without his forsight— a casualty or mishap not intended or expected to befall him. The evidence establishes beyond cavil that his action and conduct at the moment of the firing of the fatal shots constituted as to Rooney a complete, perfect self-defense as against Overby, which takes the case out of the category of ''deaths by accidental means.''

The insurance company and Overby had the right to limit by their agreement as it is set out in the policy its liability to him or his estate for his death resulting through accidental means, though external and violent, and it is our duty to enforce in this respect the policy as it is written, according to the proven facts. The facts leave no doubt in our minds that the death of Overby was the product of his wanton and willful assault, with a knife, of Rooney. It may be true that at the time he did so, he did not know that Rooney had possession of a deadly weapon and was prepared

to defend himself against the assault. This fact, however, does not relieve him nor his estate of the sequence of his willful and persistent assault of Rooney with a deadly weapon resulting in his own death. A peremptory instruction was offered by the insurance company at the close of the evidence but refused by the court. This was a prejudicial error entitling it to a reversal.

Other questions are presented in briefs, but in view of our conclusion, we do not regard it as necessary to discuss them in this opinion.

Motion for appeal sustained, appeal granted, and judgment reversed for a new trial consistent herewith.