## Jefferson Standard Life Insurance Co. v. Myers.

(Decided Nov. 9, 1934.)

BREATHITT & BREATHITT for appellant.

WHITE & CLARK for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal requires the interpretation, in the light of the developed facts, of a "double indemnity" clause of a $1,000 life insurance policy issued by the Jefferson Standard Life Insurance Company on September 21, 1925, to Wallace Myers, designating Dixie Lee Myers beneficiary.

The double indemnity clause obligates the company to pay the beneficiary, in full settlement of all claims thereunder, "double the face amount of this policy, if, during the premium-paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability, and before any non-conformity provisions other than automatic premium loan is in effect, if the death of the insured results from bodily injury within ninety (90) days after the occurrence of such injury, provided death results directly and independently of all other causes, from bodily injury, effected solely through external, violent and accidental means, while the insured is sane and sober; except these provisions do not apply * * * from bodily injury inflicted * * * intentionally by another."

On a trial before a jury a verdict was returned on the evidence under the instructions of the court for the beneficiary.

The court, on his own motion, in substance, instructed the jury that unless it believed from the evidence "the insured, Wallace Myers came to his death as the result of an injury intentionally inflicted on him by other parties," to find for the beneficiary under the double indemnity clause and that the words "intentionally inflicted" mean "an injury from a shot aimed directly and individually at the insured, Wallace Myers."

The insurance company offered an instruction which reads: "The court says to the jury that you shall find for the plaintiff in this case under the 'double indemnity' provision of this policy, unless you believe from the evidence that the insured, Wallace Myers, came to his death as the result of an injury intentionally inflicted upon him by other parties, in which latter event you shall find for the plaintiff only the sum of One Thousand ($1,000.00) Dollars." It will be observed that the material distinction between these instructions, is, the first quoted defines the words "intentionally inflicted."

A review of the situation involved at the time and the occasion of Myers' death is required to determine the propriety of the action of the court overruling the company's motion for a directed verdict as well as the criticism to the given instruction.

A serious condition existed in the mining industry

near the line between Christian and Hopkins counties. On account of it, it became necessary for the owners, to employ guards to escort "strike-breaking" miners to and from their work.

The sheriff of Christian county gave the owners support with the force of his office, to the prevention of disorder.

Wallace Myers was a deputy sheriff of Christian county, and in obedience to the direction of his superior in office (the sheriff), he accompanied, as a guard, the nonstriking miners (on May 5th, 6th, and 7th, about two or three weeks before Myers was shot and killed at the mine), while being transported in automobiles and trucks to and from the mines. On more than one occasion, the automobiles and trucks occupied by the nonstriking miners accompanied by the guards, including Myers, were stopped on the public highway by the show of force and the brandishment of arms by the striking miners. On June 7th, about 4:30 o'clock p. m., Myers was a guard on duty at the mine known as "Empire No. 6." Near this hour the miners who were engaged in work therein emerged from the mine and went to the bathhouse. About the same time, from a point some 100 or more yards from the mouth of the mine came a fusillade of shots directed at the miners on their way to the bathhouse. Close to the same time, Myers went into the office from whence he returned and went over to his car to go home, when another volley of shots was fired from behind a tree located on a hill about 150 yards from the mouth of the mine. At this time, about one hundred or more shots were fired by the persons on the hill in the direction of the mouth of the mine and the bathhouse. Myers, Johnson, and Devers were not very far from each other. Johnson, armed with a pistol, went toward the tipple. Myers stopped and began to look over the hill, like he was looking to see where the shooting was coming from; then he went across the bottom, Devers twenty or thirty steps behind him. At that time Myers was going toward the tree from which the shooting seemed to come; he was unarmed; Devers was armed with a machine gun traveling in the rear of Myers. Myers and Devers "continued in that position until they reached the shelter of the fence." When they reached this shelter they went down the fence, somewhat in the direction of the tree from which the shots had been fired. On reaching the corner of the fence,

Myers turned almost directly facing the tree at a focal point on a line from the tree to the mouth of the mine, where he was shot. The witnesses disagree as to how many miners were in sight of those shooting from behind the tree and their whereabouts in and around the mouth of the mine and the bathhouse at the moment he was shot. Instantly, after he was shot, some one "yelled," "Myers is shot!" After that only a few more shots were fired.

It is the theory of the beneficiary that he was unexpectedly shot by another, without cause or provocation; that his death resulted from "external, violent and accidental means" as these terms are used in the policy. The insurance company contends that his death resulted from assassination and that the facts developed by the evidence clearly establish that his death is within the exception of the policy, which precludes a recovery under the double indemnity clause.

The courts recognize and give effect to the language of a policy where it exempts the company from liability if death results directly and independently of all other causes from bodily injury inflicted intentionally by another, and distinguishes it from one not containing this exception.

It is "generally agreed that where the policy of insurance provides for the payment of indemnity if the injury or death of the insured is intentionally inflicted upon him by another, it is in law sustained by accidental means, provided the insured has no part in bringing it upon himself, or 'not the result of the misconduct or the participation of the injured party.'" Prudential Life Ins. Co. v. Overby's Adm'x, 251 Ky. 750, 65 S. W. (2d) 1006; Ætna Ins. Co. v. Rustin, 151 Ky. 103, 151 S. W. 366; Smith v. Federal Life Ins. Co., 219 Ky. 56, 292 S. W. 470; American Acc. Co. of Louisville v. Carson (Ky.) 30 S. W. 879; Interstate Business Men's Ass'n v. Dunn, 178 Ky. 193, 198 S. W. 727, 6 A. L. R. 1333; Davis v. Mass. Protective Ass'n, 223 Ky. 626, 4 S. W. (2d) 398; Oaks' Adm'r v. Standard Acc. Ins. Co. of Detroit, 230 Ky. 793, 20 S. W. (2d) 978. To the same effect, see International Travelers' Ass'n v. Barnes (Tex. Civ. App.) 43 S. W. (2d) 135; Order of United Commercial Travelers of America v. Singletary, 111 Fla. 248, 149 So. 480; Matson v. Travellers' Ins. Co., 93 Me. 469, 45 A. 518, 74 Am. St. Rep. 368; Washington v. Union Cas.

& Sur. Co., 115 Mo. App. 627, 91 S. W. 988; 1 C. J. 443; Price v. Inter-State Business Men's Acc. Ass'n of Des Moines, Iowa, 209 Wis. 56, 243 N. W. 461.

Also, where the policy excepts liability provisions, if injury, or death from a bodily injury, intentionally inflicted, upon the insured by another, there can be no recovery for an injury or death "that indirectly and immediately results from an intentional act of another, with intent to injure the insured, the nature of which injury reasonably could have been foreseen as a direct result of the intentional act. Matson v. Travellers' Ins. Co., 93 Me. 469, 45 A. 518, 74 Am. St. Rep. 368; Traveler's Protective Ass'n of America v. Weil, 40 Tex. Civ. App. 629, 91 S. W. 886; Washington v. Union Cas. & Sur. Co., 115 Mo. App. 627, 91 S. W. 988; 1 C. J. 443." Order of United Commercial Travelers of America v. Singletary, 111 Fla. 248, 149 So. 480, 481.

If the insured is injured by another who had the intention to injure a third party and not the person injured, the "intentional injury" clause of a policy exempting the insurer of liability for the intentional injury or death inflicted by another cannot be successfully interposed as a defense against the third party claiming the insurance benefit. Couch on Insurance, sec. 112; Vance on Insurance (2d Ed.) 997; Cooley's Briefs on Insurance (2d Ed.) vol. 6, pp. 53 to 70; Mah See v. North American Acc. Ins. Co., 190 Cal. 421, 213 P. 42, 26 A. L. R. 123; Gen. Acc., Fire & Life Assur. Corp. v. Hymes, 77 Okl. 20, 185 P. 1085, 8 A. L. R. 318; National Life Ins. Co. v. Coughlin, 72 Colo. 440, 212 P. 486; Cooper v. National Life Ins. Co., 212 Mo. App. 266, 253 S. W. 465; Newsome v. Travelers' Ins. Co., 143 Ga. 785, 85 S. E. 1035.

But where the act causing the death, or the injury, if the injury is intentionally inflicted by another, and the intentional act of the other that caused the injury or death was aimed at the insured, there can be no recovery if the policy exempts the company from liability if the same was intentionally inflicted. Travellers' Insurance Co. v. McConkey, 1127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308; Hutchcraft's Ex'r v. Insurance Co., 87 Ky. 300, 8 S. W. 570, 12 Am. St. Rep. 484, supra; Utter v. Insurance Co., 65 Mich. 545, 32 N. W. 812, 8 Am. St. Rep. 913; Jarnagin v. Travelers' Protective Ass'n of America (C. C. A.) 133 F. 892, 68 L. R. A. 499; Order

of Commercial Travelers of America v. Williams (C. C. A.) 11 F. (2d) 577, 46 A. L. R. 1081; Butero v. Travelers' Acc. Ins. Co., 96 Wis. 536, 71 N. W. 811, 65 Am. St. Rep. 61.

A very large proportion of accidents occur by reason of some intentional act of another. They may be none the less on that account accidental and within the policy, even though it excepts liability where the death or injury is caused by an act intentionally inflicted by another. To exempt the company from liability, the intention of the other must be to commit the injury or cause death as well as to do the act, and must be directed toward the insured—conduct intentionally directed toward injuring or killing him. Cooper v. National Life Ins. Co., 212 Mo. App. 266, 253 S. W. 465; Continental Cas. Co. v. Cunningham, 188 Ala. 159, 66 So. 41, L. R. A. 1915A, 538; Kascoutas v. Federal Life Ins. Co., 193 Iowa, 343, 185 N. W. 125, 22 A. L. R. 294; Olson v. Southern Surety Co., 201 Iowa, 1334, 208 N. W. 213; see Kascoutas v. Federal Life Ins. Co., 193 Iowa, 343, 185 N. W. 125, 22 A. L. R. 294, and annotations.

In the present case, the intention of the person in the possession of the gun to fire it, at the time it was fired, is secondary to his intention to injure and kill Myers. His intention to do the latter is the determinant fact, the establishment of which by competent evidence to the satisfaction of the jury is required to exempt the insurer of its liability under the double indemnity clause.

The evidence bearing on this pivotal, decisive point was entirely circumstantial. No verbal testimony thereon was introduced by either party. It was exclusively the province of the jury to apply to the solution of the issue, and evaluate, the circumstantial evidence; reconcile any apparent conflict therein, and make a finding of facts in accordance with the instructions. They correctly required the jury to believe from the evidence that the shot that caused his death was aimed directly and individually at Myers. The company's motion for a directed verdict was properly overruled.

The whole of the evidence is sufficient to sustain the verdict of the jury. We are not authorized to substitute our judgment on the facts for the verdict of the jury; nor in the circumstances, disturb it.

Wherefore, the judgment is affirmed.