## Commonwealth Life Ins. Co. v. Meade's Ex'x.

(Decided April 19, 1938.)

HOWES & WALKER for appellant.

WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee recovered a judgment for $2,000 against the Commonwealth Life Insurance Company in an action on an insurance policy providing for double

indemnity in case of death, other than by self-destruction or the intentional act of another, effected solely through external, violent, and accidental means.

The insured, J. Hobert Meade, died by gunshot, December 15, 1935. The Commonwealth Life Insurance Company insured his life by a certificate issued in accordance with and subject to the terms and conditions of a group policy which was issued and delivered to the Kentucky Bankers Association. The company agreed to pay to his estate the sum of $1,000 upon proof of death, without regard to its cause, or $2,000 in case of death resulting from accident, as defined by a provision, the pertinent parts of which follow:

"The Company will pay double the Sum Insured upon receipt of due proof that the death of the Insured ———— occurred while his insurance under this Group Policy was in force and effect, and resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external and violent and purely accidental means. * * *

"The provision for Accidental Death Benefits shall be void and shall not apply if the death of the Insured resulted (a) from Self-Destruction, whether sane or insane, or any attempt thereat; (b) from bodily injury inflicted by the Insured or intentionally by another person."

At the time the policy was issued November 20, 1934, Meade was an employee of the First National Bank of Paintsville. His wife, Edna Mae Meade, who was named executrix in his will, sued appellant for $2,000. The petition alleged that the insured was accidentally killed by being shot by an unknown person; that his death resulted "solely from bodily injuries and independently of other causes by external and violent means"; and was not brought about by self-destruction, suicide, or any attempt thereat, nor from bodily injuries inflicted by the insured or intentionally by another person. In its answer the defendant conceded that the plaintiff was entitled to the face of the policy, less the sum of $4.03, which was due it as the last semiannual premium, and it tendered and offered to the plaintiff the sum of $995.97. It denied that the insured was accidentally killed by being shot by an unknown person, or that his death resulted solely from bodily

injuries caused directly or independently of other causes by external, violent, or accidental means, and specifically denied that his death was not brought about by self-destruction or from bodily injuries inflicted by him or intentionally by another person. It alleged affirmatively that the death of the insured was caused by either bodily injury inflicted by him or intentionally by another person or persons, and that in either event the plaintiff was not entitled to recover accidental death benefits. At the conclusion of plaintiff's evidence, and again at the conclusion of all the evidence, the defendant moved for a peremptory instruction in its favor, and, in each instance, the motion was overrrruled. The case was submitted to the jury, which returned a verdict in favor of the plaintiff for the full amount claimed.

The appellant argues that the evidence shows conclusively the insured committed suicide, which exempts it from liability under the double indemnity clause of the policy; but, if wrong in this, that his death resulted from bodily injury intentionally inflicted by another person, in which event it is also exempted from liability by an express provision of the policy. Complaint is also made of the instructions and certain evidence which was admitted over appellant's objections, but, in view of our conclusion that appellant's motion for a peremptory instruction in its favor should have been sustained, it is unnecessary to consider or determine other questions discussed in briefs.

The plaintiff introduced a number of witnesses to combat appellant's theory that the insured committed suicide. The insured was general bookkeeper of the First National Bank of Paintsville, and on Saturday afternoon, December 14, 1935, one of the officers of the bank discovered certain discrepancies in his books. Examination of the books was continued the following morning, and additional discrepancies were discovered. An audit of the books after Meade's death disclosed a shortage of approximately $10,000. About 10:30 o'clock Sunday morning, December 15, Meade was called to the bank and asked to explain the discrepancies. He said they were mistakes; but it does not appear that any charges were made against him at that time. Late that afternoon, he drove his wife and two children to church to attend an Epworth League meeting, and told her he would return in time for church services. He told her he was going to drive to his

uncle's, Tom Meade's, in the country. He did not return, and after the church services, Mrs. Meade went to the home of the pastor, Rev. O. J. Polley, and waited until 10 o'clock. She became alarmed, and, accompanied by Mr. and Mrs. Polley, she started in search of her husband in Polley's car. They found his car parked on the side of the road about five miles from Paintsville, and about two miles from the home of Tom Meade. The left front door of the car was locked and the right front door was open. The insured was sitting in the driver's seat slumped over the steering wheel with a bullet hole through his head. He had been dead several hours. The bullet had entered just above and slightly behind his right ear, and had passed out above his left eye. There were two bullet holes through the glass of the left front door of the car, and one bullet hole through the left rear door. A .38 caliber pistol was found hanging on the third finger of the insured's right hand. It contained one empty shell and two loaded shells. The bullet which killed the insured had passed through the band of his hat, and the hat was powder burned, indicating that the shot had been fired at close range. Several witnesses testified that the fatal wound was produced by a .32 or a .32-20 caliber pistol. Two empty .32-20 shells were found on the side of the road near the right front door of the car. There was also proof that a man's tracks leading from the right front door of the car up the road could be seen.

The evidence in regard to the size of the bullet which caused the fatal wound is far from convincing, but it may be conceded, for the sake of argument, that the evidence was sufficient to take the question of suicide to the jury. If the insured did not commit suicide, then, necessarily, he was shot and killed by another person, and the proof shows conclusively that if this is true the shooting was intentional. In fact, the appellee insists that the insured was murdered, but argues that this does not preclude her from recovering under the double indemnity clause of the policy, and she cites and relies upon Davis v. Massachusetts Protective Association, 223 Ky. 626, 4 S. W. (2d) 398, 400. In the Davis Case, it does not appear that the policy contained a clause similar to the one relied upon by the appellant in this case, exempting the insurer from liability if the death of the insured resulted from bodily injury inflicted intentionally by another person. The policy

merely insured Davis against loss resulting from bodily injuries effected directly or independently of all other causes by accidental means, and due solely to external, violent, and involuntary causes. Davis and one Bennett were engaged in a scuffle over a pistol in the possession of Bennett, and, while they were engaged in the struggle, the pistol was discharged and Davis was fatally wounded. It was held that even though Bennett intentionally fired the shot, yet, as to Davis, the injury was brought on by accidental means. The opinion clearly distinguished the case from the cases in which the policy contained a provision exempting the insurer from liability if the injury was inflicted intentionally by another. Such a provision has been upheld by this and other courts in numerous opinions. Jefferson Standard Life Insurance Company v. Myers, 256 Ky. 174, 75 S. W. (2d) 1095; Owens v. National Life & Accident Insurance Company, 234 Ky. 788, 29 S. W. (2d) 557; Oaks' Adm'r v. Standard Accident Insurance Company, 230 Ky. 793, 20 S. W. (2d) 978; Smith v. Federal Life Insurance Company, 219 Ky. 56, 292 S. W. 470; Bryant's Adm'r v. Kentucky Central Life & Accident Insurance Company, 216 Ky. 806, 288 S. W. 766; Hutchcraft's Ex'r v. Travelers' Insurance Company, 87 Ky. 300, 8 S. W. 570, 10 Ky. Law Rep. 260, 12 Am. St. Rep. 484; Cooley's Briefs on Insurance, 2d Edition, vol. 6, pp. 5363-5373; Annotation in 56 A. L. R. 685. In Davis v. Massachusetts Protective Association, supra, relied upon by appellee, the court said:

> "It would appear, therefore, that an insurance company may limit its liability by providing specifically against liability in the event the injury is caused by the intentional act of the insured or by any other person. However, the intentional act of some other person in inflicting the injury does not take the injury out of the class of injuries effected directly by external, violent, or accidental means, without a specific exemption from such liability."

In the present case, a specific exemption from such liability was contained in the policy. The insurance company and Meade had the right to limit by their agreement, as it is set out in the policy, its liability to his estate for his death resulting through accidental means, and it is our duty to enforce in this respect the policy as it is written. The facts show that the death of Meade resulted from suicide or bodily injuries inten-

tionally inflicted by another. In either event, the policy specifically exempts the appellant from liability under the double indemnity clause.

The judgment is reversed for further proceedings consistent herewith.