CHIEF JUSTICE HARDIN
delivered the opinion oe the court.
On the 11th day of March, 1867, the appellees, who owned and were navigating the steamboat Mercury in the White and Mississippi rivers, took on their boat at Clover Bend, upon Black River, a tributary of White River, in the state of Arkansas, two hundred and seven mules and three horses for transportation by the usual route to Memphis, Tenn., under an ordinary contract of affreightment between them and the appellant as the owner of the mules and horses. As the boat proceeded on its way, descending White River, that stream was found in many places to have so overflowed the adjacent country that the usual channel for navigation was often only discernible by the current of the river and the timber standing upon and indicating its banks. When -near the mouth of White River, and at a point where it and the Arkansas River approach within about five miles of each other, and are connected together by a navigable “cut-off,55 the Mercury was stopped for the purpose of obtaining wood from a flatboat which was fastened to a tree at the overflowed bank, nearly if not quite opposite to the mouth of the cut-off, into which a strong and rapid current was running, perhaps increased by back-water from the Mississippi and the excess in the volume of water in White River, owing to its swollen *36 condition over that in the Arkansas. In the attempt to resume her course the boat, from some cause, which is one of the principal subjects of inquiry in this casé, was run or forced into the cut-off, and when near the Arkansas River was wrecked upon a snag, and all the live-stock on board, as well as about thirty persons, was drowned.
This action was brought to recover damages for the loss of the appellant’s property. A trial of an issue involving the question of legal liability resulted in a verdict and judgment for the defendants (the appellees), which are now before this court for revision.
The first question to be determined relates to the action of the court in refusing to allow the plaintiff to read to the jury as evidence in chief either one of two papers purporting to be copies of a protest, made and entered by the master and others of the officers and crew of the boat on the day next after the disaster, before the county and probate judge of Desha County, Ark., at the town of Napoleon, there being no notary public or other authorized officer there to take the same. The papers offered were proved to be copies of the original protest which remained in the possession of the judge, and one of them was so certified by him and the other by the clerk of the county and probate courts.
It is first argued for the appellees that neither of these papers was admissible as evidence; the first because it does not appear that the judge was the keeper of the protest as a record pertaining to his office, and the second because the original was not in the clerk’s official custody as a record of any sort. But waiving these and the further objection that the statements of the protest were merely the declarations of the appellees’ agents, made after the matters they purported to detail had transpired and the alleged liability, if any exists, had already been incurred, we will consider the question in its more important aspect as a legal proposition: whether the ex-parte *37 statement or protest of the officers of a boat navigating the inland waters of this country, in relation to any disaster which may have happened to the boat, although verified by them, and an important document for certain purposes, can be used as evidence in chief, except against themselves, in a court of this state. We have no rule of practice which places such testimony on the footing of an ordinary deposition.
But it was insisted by the able and now lamented counsel for the appellant, who argued this case upon its first hearing, that the protest being made by the master and his subordinates in pursuance of their duty as the employees of the appellees, its statements in relation to the subject-matter of that business, though having reference mainly to what had already transpired, were binding on the appellees as part of the res gestee; and this is perhaps the most plausible ground on which the point contended for has been placed by the argument for the appellant. But if, for the reason stated, the protest was admissible as evidence against the appellees at all, certainly their liability, to be affected by its statements concerning the sinking of the Mercury and its causes, could not extend beyond the scope of the legitimate objects of the protest, which we are constrained to conclude, notwithstanding some apparently conflicting adjudications on the subject, do not generally embrace more than the procurement of preliminary proof for the adjustment of insurance and like purposes, together with a prompt disclosure of the facts respecting losses or damage sustained during a voyage, for the information and convenience of persons interested in the vessel or its cargo; and especially is this so with reference to inland navigation, which is not generally attended with that difficulty in procuring the testimony of witnesses which occurs in voyages at sea. (Gardner, &c. v. Little, 8 Serg. & R. 533; Fleming v. The Marine Ins. Co. 3 W. & Serg. 144.) It results that in our opinion the copies of the protest offered as evidence in chief were properly rejected.
*38 ■ There is yet another question to be disposed of with reference to the admissibility of these papers. Among other testimony for the defendants conducing to prove that the boat was forced into the cut-off by the violence of the wind and current, the defendants had the depositions of four persons whose names are affixed to the protest, and examined three others orally, who on having the copies shown them admitted they signed and swore to the original paper. Thereupon the plaintiff offered to read one of the copies to the jury for the purpose of contradicting all of these witnesses, to which the defendants objected, and the objection was sustained as to the four witnesses first mentioned, but overruled as to the others, and the paper admitted for the purpose only of contradicting and discrediting them.
The principle is well settled with reference to the practice of discrediting a witness by proof of oral statements contradictory of what he has testified, that before this can be done it is generally necessary first to ask him as to the time, place, and person involved in the supposed contradiction. It is insisted for the appellant, however, that this rule does not apply in a case in which the discrediting evidence consists of the written statements of the witness, and the cases of Baylor v. Smithers (1 Monroe, 6) and Hendron v. Robinson (9 B. Mon. 503) are cited as authority for this distinction. It does not appear from either of those decisions that the particular question now under consideration was ever suggested to the court, and it is moreover fair to presume that as the witnesses were orally examined in court their attention was called to the written matter used or offered to contradict them.
Looking to the reason of the rule, as well as the authorities concerning it, we are satisfied that generally, even at the common law, before a writing can rightly be used as a means of contradicting a witness, he should. have an opportunity of reading or hearing it read. (1 Greenleaf, sec. 463.) But, *39 however this might be, section 662 of the Civil Code in effect declares that in a case like this the writing “ must be shown to the witness, and he allowed to explain it,” before it can be used as evidence to contradict him.
At the conclusion of the evidence the appellant, besides asking certain instructions, which were given to the jury, moved the court to give the following instruction, which was refused: “ When the Mercury landed at the wood-yard, just before she went into the cut-off, it was the duty of the officer in charge to keep her line to the shore until she could proceed safely on her voyage down White River; and if the jury believed from the evidence that when she was pushed out into the river there was wind or current prevailing which might force her out of her route into the cut-off, and that the loss occurred while she was out of her route, as in the cut-off, the defendants are liable to the plaintiff for his loss.”
The refusal of the court to give this instruction is complained of as an error to the prejudice of the appellant. The general principle may be admitted that if the boat was in a place of actual or comparative safety, which, owing to the wind and proximity to the cut-off or other causes, it was perilous then to attempt to leave, it was the duty of the officer in charge of the boat to wait as long as was necessary to avoid the danger. But it was the province of the jury to determine from all the evidence what prudence and necessity required, which may have depended in a great measure on the direction and violence of the wind at the precise time of starting the boat, and on her situation and position with reference to the cut-off and other causes of danger, whether moored at the shore, as assumed in the instructions, or lashed with the wood-boat to a tree entirely surrounded by deep water, as the evidence conduces to prove. It would have been palpably erroneous for the court to assume, as it was in effect asked to do, that the boat was landed and tied at the shore, or that *40 danger from the wind existed before the attempt was made to resume the voyage. There was no error therefore in refusing the instruction. Nor do we perceive any valid ground of objection to the instructions which were given at the instance of the defendants.
With reference to the only remaining question, whether the verdict is sustained by the evidence, it may suffice to say that after carefully reading and collating all the evidence, much of which is conflicting, we are satisfied that there is no such preponderance of the weight of the evidence against the finding of the jury as would have authorized the ordering of a' new trial in the court below, or should require a reversal of the judgment by this court..
Therefore the judgment is affirmed.