# National Life & Accident Insurance Co. v. Jones.

(Decided Sept. 24, 1935.)

RODES & HARLIN for appellant.

B. T. ROUNTREE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The competency of the evidence offered by the insurer bearing on the right of Drucilla Jones, the beneficiary, to recover on the "double indemnity clause" of an insurance policy, issued by the National Life & Accident Insurance Company of Nashville, Tenn., to Fred Jones, is the question presented for determination

The policy was issued August 7, 1933, to Fred Jones for a weekly premium of 15 cents; the amount payable in the event of his death was $210.

On a trial to a jury the beneficiary introduced evidence to establish her right to recover of the insurer on the "double indemnity clause" of the policy. At the conclusion of the evidence in her behalf, the parties stipulated that the testimony of named witnesses who

had testified in a prosecution of the commonwealth against W. C. Poston.for the crime, committed by the shooting, wounding, and killing the insured, Fred Jones, ''be considered as the testimony of said witnesses given in this case, as if they had testified in person and offered to be introduced before the jury.'' To the introduction of the witnesses or the reading of their testimony to the jury, Drucilla Jones objected, insisting it was incompetent. The court sustained the objection and refused to admit the offered testimony. The jury returned, under the instructions of the court, a verdict for the beneficiary. The ''double indemnity clouse'' reads:

''* * * Upon Receipt of Due Proof that the Insured after attainment of age 5 and prior to the attainment of age 70 has sustained bodily injury, solely through external, violent and accidental means, occurring after the date of the policy and resulting in the death of the Insured within ninety days from the date of such bodily injury while the policy is in force, and while no premium is more than four weeks in arrears, the Company will pay, in addition to any other sums due under the Policy and subject to the provisions of the Policy, a Benefit for death by accidental means equal to the face amount of insurance stated in the Policy less the amount of any disability benefit which has become payable under the policy on account of the same bodily injury except as provided below:

''Exceptions: [1] If the bodily injuries referred to above shall be sustained by the Insured while engaged in employment in or on the premises of any open pit or under ground mine, or shall be sustained by the Insured while on or about the premises or right of way of any railroad company while the insured is following the occupation of gang, track, or railway laborer; trackwalker; yard, freight or mixed train brakeman or flagman, the additional Benefit for death by accidental means referred to in the first paragraph hereof shall be one half of the face amount of insurance stated in the policy, less the amount of any disability benefit which has become payable under the Policy on account of the same bodily injury. [2] No benefit for death by accidental means will be paid if the death of the Insured resulted from suicide or from

having been engaged in military or naval service in time of war, or in submarine or diving operations, or in aviation as a passenger or otherwise.''

As a basis of her recovery, Drucilla Jones, in her petition, sets forth, hæc verba, the above ''double indemnity clause,'' followed by the allegation that the death of Fred Jones resulted from ''bodily injury, solely through external, violent and accidental means,'' which occurred after the date of the policy, while it was in full force and effect; no premiums were in arrears, and she had furnished ''due proof'' of his death to the insurer.

The insurance company traversed the allegations of the petition and further alleged Jones' death resulted from a gunshot wound inflicted by W. C. Poston, while they were both armed with deadly weapons, and that Jones brought on the difficulty by voluntarily first assaulting Poston with a deadly weapon, and at the time Poston shot Jones, he (Poston) was acting in self-defense.

It is the contention of Drucilla Jones that though the death of Fred Jones resulted from a gunshot wound at the hands of Poston while they were engaged in an encounter, she is entitled to recover on the ''double indemnity clause,'' because the defense presented by the insurance company is not within the exception contained in the ''double indemnity clause.'' It is the contention of the insurance company that her right to recover is limited by the express language of the ''double indemnity clause'' to death from ''accidental means.''

It is very clear that the exception contained in the ''double indemnity'' provision is in no way involved; nor is it required of us to determine properly the question at issue to consider or construe it. The decisive issue raised by the pleadings, is, was Jones' death caused by ''accidental means,'' and the sole question now presented, is the offered evidence competent on this issue? It is not disputed that his death was the result of ''external and violent'' means.

The expression ''accidental means,'' as it is used in the policy, has been used in policies of insurance for more than fifty years. It has been interpreted in nearly every state in the Union. The case which is most often quoted is probably United States Mutual Accident

Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. Ed. 60, where this instruction was approved by the Supreme Court of the United States:

> "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

This is substantially the definition given in 6 Cooley Brief on Insurance (2nd Ed.) sec. 5234; Couch on Insurance, section 1137; Vance on Insurance, sec. 871. Another definition frequently quoted is that given in Western Com. Travelers' Ass'n v. Smith (C. C. A.) 85 F. 401, 405, 40 L. R. A. 653:

> "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

See, Trau v. Preferred Acc. Ins. Co., 98 Pa. Super. 89.

The courts seem to be agreed that where the cause of injury or death was the act of the insured, the means which caused the result to be accidental must be undesigned and unintentional on the part of the insured, and that an accidental injury or death is an unintended and undesigned result arising from his acts; and an injury

or death by accidental means is the result arising from his acts unintentionally done. Urian v. Equitable Life Assur. Soc., 310 Pa. 342, 165 A. 388.

Couch, Ency. of Insurance Law, vol. 5, p. 4068, sec. 1158, aptly states the rule applicable to this case, in these words:

> "Injuries sustained by an insured in an encounter brought about by his assault upon another with a deadly weapon, or upon one who he knew had such a weapon, are not sustained by accident or by accidental means, since in such a case the injury or death is the natural and probable consequence of his own act. And this, although the assailant did not know that his victim was armed."

Sustaining this author's statement, see Prudential Life Ins. Co. v. Overby's Adm'x, 251 Ky. 750, 65 S. W. (2d) 1006; Taliaferro v. Travelers' Protective Ass'n of America (C. C. A.) 80 F. 368; Dark v. Prudential Ins. Co. of America (Cal. App.) 40 P. (2d) 906; Virgil McGuire v. Metropolitan Life Ins. Co., 164 Tenn. 32, 46 S. W. (2d) 53; Isoard v. Mutual Life Ins. Co. of N. Y. (C. C. A.) 22 F. (2d) 956; Hesse v. Travelers Ins. Co., 299 Pa. 125, 149 A. 96; Camp v. Prudential Ins. Co., 107 Pa. Super. 342, 163 A. 320; Occidental Ins. Co. v. Holcomb (C. C. A.) 10 F. (2d) 125; Gilman v. N. Y. Life Ins. Co. (Ark.) 79 S. W. (2d) 78, 97 A. L. R. 755.

In those cases the insured was the aggressor at the time he sustained the injury resulting in his death, and knew, or should have anticipated, that the other might kill him. The intendment of the offered evidence in the present case was to establish that Jones' death at the hands of Poston was the product of his (Jones') own intentional act.

The "double indemnity" provision, it will be observed, does not insure Jones against accidental death, but solely against death effected by "accidental means." A difference, therefore, must be made, in determining the beneficiary's right to recover and the liability of the insurance company, under it, between the result of the accident and the means which was the operative cause of his death. It is not enough that death was unexpected or unforeseen, but there must be some evidence of unexpectedness in the preceding act or occurrence which led to his death. See Rock v. Travelers' Ins. Co.,

410

172 Cal. 462, 156 P. 1029, L. R. A. 1916E, 1196. The term "accidental means" depends for its application upon the facts in each particular case. The different facts and circumstances presented in different cases have resulted in the varying language used by the courts, when interpreting the term "accidental means," but the principle involved has been essentially the same in every case.

The presumption is that Jones' death was the result of a gunshot wound as fired by Poston was accidental, and the burden was on the insurer to prove that his death was not accidental, within the "double indemnity clause." Gilman v. N. Y. Life Ins. Co., supra. The evidence in behalf of the beneficiary was sufficient to entitle her to the benefit of such presumption. And in view of the principles herein reiterated, it is not doubtful that the offered evidence is competent to establish that the action and conduct of Jones at the moment of the firing of the fatal shot by Poston constituted self-defense on the part of Poston as against Jones, and admissible to show that his death was not the proximate result of "accidental means." It is strikingly like unto that in behalf of the insurer in the Overby Case.

Without reproducing it, and not considering or passing on any other question, we are prepared to say that the rejected evidence was competent, and the court improperly refused to permit it to be admitted to the jury.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.