## John Hancock Mut. Life Ins. Co. v. Long.

March 18, 1941.

758

William Marshall Bullitt, Francis T. Goheen and Bruce & Bullitt for appellant.

T. F. Birkhead and H. A. Birkhead for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant issued an insurance policy on the life of Sam Long, providing for the payment of (1) death benefits of $1,000 and (2) accidental death benefits of an additional $1,000. The clause providing for accidental death benefits, so far as is pertinent, reads:

"Upon receipt of due proof of the death of the insured * * *, as the result of bodily injury * * *, caused solely by external, violent and accidental means, * * *; and provided .further that the death of the Insured was not caused direct-

ly or indirectly  *  *  *  from any violation of law by the Insured  *  *  *  the Company will pay an additional sum of $1,000.''

On the morning of April 25, 1938, Sam Long, the insured, was found mortally wounded in a box car on a side track in Owensboro, Kentucky. He died within a few hours thereafter. The appellant paid the initial $1,000 ordinary death benefits, but refused to pay the additional $1,000 provided for in the accidental death benefit clause of the policy, whereupon appellee, the named beneficiary of the policy, brought this action to recover of appellant under the latter clause of the policy.

Defendant defended upon the grounds that (1) Long's death was not the result of bodily injuries caused solely by accidental means as provided in that clause of the policy, and (2) his death was caused directly or indirectly by his violation of the law which, under the terms of the accidental death benefit clause of the policy, precludes any recovery thereunder.

Defendant filed its answer traversing certain material allegations of the petition, and pleaded affirmatively that on April 24, 1938, the deceased and Ernest Johnson were trespassing on a freight train coming from Indiana to Owensboro, Kentucky, and on that trip they became intoxicated by drinking bay rum, rubbing alcohol and other poisonous intoxicants and as a result thereof became mentally infirm and became involved in a fight with each other and Johnson struck deceased on the head and as a result of which deceased's death ensued; that his death was not caused solely by external, violent or accidental means within the meaning of the policy but was caused directly or indirectly by mental infirmity and violation of the law; that at the time of the altercation resulting in the death of deceased he was a trespasser on a railroad freight car which constituted a violation of law and contributed directly or indirectly to the injury which caused his death. By reply, appellee traversed affirmative allegations of the answer.

Appellant filed its amended answer pleading more fully various and sundry alleged violations of the law by the deceased, which it alleged was a direct or indirect cause of his death.

It is alleged that deceased purchased from a bootlegger intoxicating liquors on which the Federal In-

ternal Revenue taxes had not been paid and drank and consumed such illicit liquor and thereby became intoxicated and that his death was caused directly or indirectly by the purchase and drinking of said illicit liquors which was a violation of the laws of the United States. It is further alleged that the deceased provoked and brought on a fight with Ernest Johnson and profanely cursed and swore and violated Section 1319 of the Kentucky Statutes, and that his death was caused directly or indirectly by that violation of the law; that deceased used abusive and insulting language, thereby intending to insult Ernest Johnson and others and in so doing he violated Section 1271, Kentucky Statutes, and that his death was caused directly or indirectly by this violation of the law; that deceased committed a breach of the peace on Ernest Johnson in violation of Section 1268, Kentucky Statutes, and that this violation of the law directly or indirectly caused the death of deceased; that deceased became drunk and intoxicated in a public place and on the highway, and on a street, and near or about a depot, platform, waiting station and room, and near a public building, and in the commission of these acts he violated certain sections of the Statutes and that these violations directly or indirectly resulted in his death.

Upon motion of appellee, plaintiff below, the court struck from the answer the allegations concerning deceased's purchase and consummation of "bootleg" whisky, drinking intoxicating liquors in a public place and breach of the ordinance of the city of Owensboro, to all of which appellant excepted and still complains. By subsequent pleadings the issues joined and a jury trial resulted in a verdict and judgment thereon in favor of appellee in the sum sued for.

In the motion and grounds for a new trial which were overruled, a large number of alleged errors are set out and relied on for reversal, and since they will be discussed in the course of the opinion, it is unnecessary to set them out at this point.

Since the case must be reversed because of erroneous instructions and certain incompetent evidence admitted in behalf of appellee, all of which we will later consider, it becomes unnecessary for us to enter into a detailed discussion of the evidence for the purpose of determining the sufficiency thereof to support the verdict, except so far as may be necessary to determine cer-

tain questions which might arise upon another trial of the case.

Long, the deceased, received the wound from which he died on Sunday night April 24, 1938. About noon that day Long and Ernest Johnson met in the railroad freight yards at Howell, Indiana, and left there in the early afternoon and hoboed a freight train to Owensboro, Kentucky, arriving there in the early part of the night. It appears that while they were in Indiana and en route to Owensboro, they drank certain alcoholic beverages and were considerably intoxicated when they arrived at Owensboro where they were joined by three other companions, William Feldman, Jacob Henry and Daniel Boone. They procured a pint of "bootleg" whisky and then went to a carnival grounds in Owensboro. According to the evidence of Feldman he procured the whisky and paid for it with his own money. It appears that Long got possession of the whisky, or had it in his hands, and Johnson had a bottle of coca cola which they had procured to be used as a "chaser" and they, Johnson and Long, entered into a dispute over the right to the first drink of the whisky, Long insisting that since he had the whisky he was entitled to the first drink, and Johnson insisting that since he had the coca cola he was entitled to the first drink. Long raised the bottle to take the disputed drink and Johnson struck him on the side of the head with the coca cola bottle, breaking the bottle and spilling the coca cola. The blow did not knock Long down but apparently it affected him considerably. Long, Johnson and Feldman soon left the carnival grounds on their way to the railroad yards, a distance of about ten blocks. Long complained of his head hurting him and it was suggested by some one that they procure for him an aspirin tablet but Long said he did not think that was necessary, and sat down for awhile on the railroad track. Before reaching the railroad yard or grounds they were again joined by Henry and Boone and finally Long, Feldman and Johnson went into a box car on the railroad siding and the other companions went home. Feldman testified that he left Long and Johnson in the box car and no further trouble had occurred up to that time. On the next morning Long was found unconscious in the box car and died soon thereafter as indicated above. Johnson was arrested for the killing of Long and it appears that he was convicted and was, at the time he gave his deposition in this case, con-

fined in the penitentiary at Eddyville. According to the evidence of Johnson, after Feldman left him and Long in the box car, he, Johnson, wanted another drink of whisky and started to get the bottle out of Long's pocket, whereupon Long struck Johnson, knocking him down on a piece of timber and Johnson arose with the timber, or club of some kind not definitely described in the evidence, and struck Long over the head with it but he was not positive whether he hit him only once or twice.

Dr. L. C. Dodson, a witness for appellee, testified that he saw Long after he was taken to the hospital on the morning of April 25, and that he had lacerations of the face and scalp. The Doctor did not seem to have much independent recollection about Long's condition except that shown by the hospital records. He said, however, that Long's head was "butchered up." On cross-examination the Doctor was asked if it was not true when he examined Long that he had a lacerated scalp, lacerated face, multiple contusion or abrasion or shock, odor of alcohol and fractured skull, and he answered: "According to the hospital records that is what my diagnosis was." The Doctor was also asked if he believed from his experience as a Doctor it was at all probable that a man in Long's condition would walk thirteen blocks or a mile (meaning the distance from the street carnival grounds to the box car where he was found), and he answered: "In the condition he was in when I saw him he was not apt to have done that. He might do it, but it is not probable that he would have." He was also asked: "Under the diagnosis you have made would it be possible for a man to be in that condition by having received a lick in the back of the head?" "Ans. I do not see how he could have gotten all the licks on his head with one lick. It depends probably on what he was hit with."

The appellant seriously contends that the blows Long received at the hands of Johnson in the box car was the cause of his death, and according to the undisputed evidence of Johnson, Long brought about the difficulty or fight between him and Johnson by assaulting the latter and, therefore, Long's death was caused by his violation of the law within the meaning of the policy contract and for that reason a recovery for his death is precluded. If Long assaulted Johnson and thereby pro-

voked Johnson to strike him, or forced him to do so in self-defense, in that event Long's death was caused indirectly by his unlawful assault and conduct toward Johnson for which no recovery can be had under the terms of the clause of the policy in question. Prudential Life Ins. Co. v. Overby's Adm'x, 251 Ky. 750, 65 S. W. (2d) 1006; National Life & Accident Ins. Co. v. Jones, 260 Ky. 404, 86 S. W. (2d) 139; Price v. Business Men's Assur. Co., 188 Ark. 637, 639, 67 S. W. (2d) 186.

If it had been conclusively shown that Long's death resulted from the wounds inflicted on him by Johnson in the box car, brought about in the manner described by Johnson, a directed verdict in favor of appellant would have been proper. However, since it is disclosed by the undisputed evidence that Long received a severe blow at the hands of Johnson with the coca cola bottle at the street carnival grounds, we do not think the court erred in submitting the case to the jury, since the evidence presented a question for the jury to determine from which wound Long's death resulted, if either —the one received at the street carnival grounds, or the one received in the box car under the conditions described by Johnson. There is no evidence tending to show that Long was assaulting or attempting to assault Johnson when he struck Long with the coca cola bottle. They were merely having an argument over which should take the first drink of whisky. The evidence before us does not disclose that Long said or did anything which would amount to as much as the breach of the peace as against Johnson or any one else on that occasion and, therefore, Johnson, struck Long with the coca cola bottle even without sufficient provocation for assaulting him in the manner he did. It results, therefore, that if Long's death resulted from the blow with the coca cola bottle it was accidental within the meaning of the policy, unless his death was caused either directly or indirectly as a result of his drunkenness. American Accident Company of Louisville v. Carson, 99 Ky. 441, 36 S. W. 169, 18 Ky. Law Rep. 308, 34 L. R. A. 301, 59 Am. St. Rep. 473; Campbell v. Fidelity & Casualty Co. of New York, 109 Ky. 661, 60 S. W. 492, 22 Ky. Law Rep. 1295.

While the word "indirectly" as used in the policy includes a remote cause as well as a direct one, yet, even a remote cause must have a reasonable causal ef-

fect. It might be so extremely remote as to be beyond contemplation of the contracting parties when the contract was made. To illustrate the point, let us suppose that A violates the law in another state and to evade the penalty of the law he flees to Kentucky and in the course of his flight and in connection therewith he is accidently killed. In that event no doubt A's death would be considered as having been indirectly caused by his violation of the law and a recovery under a policy like the one here involved would be barred. But, let us go a step further. After A reaches Kentucky and his flight has ended, he is walking along a railroad track and is accidentally struck and killed by a train. Even then, it might be said that the cause of his death is traceable step by step, event by event, to his violation of the law in the other state, because if he had not violated the law in the other state he would not have been in Kentucky and, had he not been in Kentucky, his death would not have occurred. But, we think that in the latter event the violation of the law as the starting point of the chain of events leading to his death would be so extremely remote as to be beyond any reasonable contemplation of the contracting parties.

Since Johnson's striking Long with the coca cola bottle was the direct cause of his death, if his death did result from such striking, then the question of whether or not Long's alleged violation of various laws caused his death directly or indirectly must be considered from the viewpoint of whether or not such alleged violations of the law by Long directly or indirectly caused Johnson to strike him, or had a reasonably causal connection therewith.

To support appellant's contention that Long's multiple violations of the law directly or indirectly caused his death numerous foreign cases are cited. In Travellers' Ins. Co. v. Seaver, 19 Wall., U. S., 531, 22 L. Ed. 155, Seaver was driving in a horse race on which money was wagered and was accidentally killed in a collision with another driver in the same race. The Supreme Court of the United States held there could be no recovery because Seaver's death was due to his violation of a statute making it unlawful to drive in a horse race on which money was wagered. The soundness of that opinion cannot be doubted, since it is obvious that Seaver's death had a direct connection with his violation

of the law. Also, in Duran v. Standard Life & Accident Ins. Co., 63 Vt. 437, 22 A. 530, 13 L. R. A. 637, 25 Am. St. Rep. 773, Duran was injured by slipping and falling while returning from hunting on Sunday in violation of a Vermont law forbidding Sunday hunting, and the Supreme Court of Vermont held that Duran's injuries were directly caused by his violation of the law. It was said in that opinion that the traveling of Duran was as much a part of his act of hunting as carrying his gun and ammunition or shooting or capturing game. This case is in line with the case supra, since it cannot be doubted that Duran's injury had a direct connection with his unlawful act.

In Szymanska v. Equitable Life Ins. Co., 7 W. W. Harr., Del., 272, 183 A. 309, the deceased insured came to his death as a result of being thrown down a flight of stairs by a man who caught him, deceased, in a room with the assailant's wife under conditions and facts constituting a violation of the law. The Delaware court held that no recovery could be had under the policy, since the death of the plaintiff's decedent resulted indirectly from his violation of the law.

In Runyon v. Western & Southern Life Ins. Co., 48 Ohio App. 251, 192 N. E. 882, 883, Runyon's administratrix sued for the accidental death benefits under a clause in the policy similar to the one involved in the present case in respect of violations of law. The plaintiff's decedent was burned to death in a fire at the penitentiary in which he was confined for violating the law. The Ohio Court of Appeals held that no recovery could be had under the "violation of law" provision of the contract, holding that the word "indirectly" included remote causes as well as direct ones. The court said:

> "It is true that the proximate cause of the death of the deceased was the fire. The indirect cause of his death was his unlawful act which caused his confinement in the penitentiary, resulting in his death by means of the fire."

It is to be noticed that the Ohio court only enumerates two causes; one, the direct cause being the fire, but apparently combines two remote causes into one, that is, the violation of the law *and* his confinement in the penitentiary for the violation. We think a more proper or logical analysis would be to say that the proximate cause

of the death was the fire, and the secondary or first intervening cause was his confinement in the penitentiary, and a third or further remote cause was his violation of the law for which he was confined in the penitentiary. It may be conceded that this case is more strongly in favor of appellant's position than the other cases cited, supra, yet we think the conclusion reached therein is rather far-fetched.

We now come to consideration of the court's ruling in striking from appellant's answer the allegations that Long's death was caused directly or indirectly by his alleged violation of said law, namely, (A) purchase and consummation of bootleg whisky, (B) drinking of intoxicating liquors in a public place, and (C) breach of the ordinance of the city of Owensboro.

Under the terms of the policy contract we think appellant had the right to plead as a defense that Long's death was caused directly or indirectly by the violation of any law that appellant saw cause to plead, and it had the right to offer evidence to prove such allegations.

We think the court erred in striking from the answer the allegations referred to, and upon another trial of the case appellant should be given an opportunity to prove, if it can, that Long's death was caused directly or indirectly by his violation of any law pleaded by appellant.

The next complaint is that the court admitted incompetent evidence offered by appellee in rebuttal concerning certain alleged statements made by Ernest Johnson after he was charged with the homicide of Long. John Potter, testifying in rebuttal for appellee, was asked:

"Did you talk with Ernest Johnson any after he was arrested at police headquarters? A. Yes, sir, I did.

"Q. I will ask you if he did not state in that conversation that he was so drunk that he did not know what happened? A. Yes, sir, he did state that."

Also, Vernie Bidwell, a police officer of Owensboro, gave the following testimony for the same purpose:

"Q. Did you talk with Ernest Johnson after his arrest? A. Yes, sir, I think it was the second

day after this happened that he was returned here from Evansville.

"Q. I will ask you whether or not he stated to you or in your presence at that time in the City of Owensboro that he was so drunk that he did not know what did happen at all? A. He said he remembered striking him and he did it, and that is about all he said about it.

"Q. What did he say about being so drunk he did not know what did happen? A. He said he was so drunk, and the next thing he remembered was the whistle blowing on the train."

The objections to the rebuttal testimony is that no foundation was laid for the impeachment of Johnson. Johnson did not testify before the jury but gave his deposition in the Eddyville penitentiary, but he was not asked whether or not he made the statements to Potter and Bidwell testified to by them. This was contrary to Section 598 of the Civil Code of Practice, which reads:

"Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it."

The same rule obtains in criminal actions under Section 189 of the Criminal Code of Practice. Eason v. Commonwealth, 242 Ky. 442, 46 S. W. (2d) 772. See, also, Jarrell v. Commonwealth, 240 Ky. 845, 43 S. W. (2d) 177; Gatliff Coal Co. v. Hill's Adm'r, 263 Ky. 309, 92 S. W. (2d) 56. The reason for and the purpose of the rule is stated in the case of Craft v. Commonwealth, 81 Ky. 250, 50 Am. Rep. 160, to which reference is made.

It follows, therefore, that since no foundation was laid for the impeachment of the witness, Johnson, it was error to admit such testimony.

Lastly, it is insisted that the instructions given to the jury were erroneous. Instruction No. 1 reads:

"The jury is instructed that the striking and killing of Samuel K. Long by Ernest Johnson, if he were struck and killed by him, was a bodily injury sustained by external, violent and accidental means and

the jury should find for the plaintiff, unless they believe from the evidence defendant is excused from liability on the policy on the ground stated in the second or third or fourth instructions, or either of them.''

By instruction No. 2, the jury were told that if they believed from the evidence that Long was assaulted by Johnson, ''and at the time of such assault realized that such assault was dangerous to him, and with such knowledge and consciousness of such danger voluntarily made the assault which exposed him to the danger they should find for the defendant.''

We think instruction No. 2 as qualified by the quoted provision thereof was error. The policy contract merely provides against liability for death caused directly or indirectly by Long's violation of the law, without any qualifications with respect to his knowledge or consciousness of any danger to which such violation may subject him. Counsel for appellee attempts to defend the correctness of the qualifications of that instruction on the authority of Campbell v. Fidelity & Casualty Co. of New York, 109 Ky. 661, 60 S. W. 492, 495, 22 Ky. Law Rep. 1295. The policy involved in that case exempted the insurer from liability for injuries resulting from ''voluntary exposure to unnecessary danger.'' It is obvious that the policy involved in the case supra, and the present one are not analogous.

By instruction No. 3 the jury were told that if they believed from the evidence that the death of Long was caused directly or indirectly from any violation of law by Long, the jury should find for defendant. The objections to this instruction are that it was too indefinite and did not inform them of any particular violations of law, but left such questions to the jury to determine for itself what constituted a violation of law, or what law, if any, Long had violated. We think the objections are well taken. Upon another trial of the case, if one is had, the court will specifically set out in the instructions all violations of the law well pleaded by defendant, provided, the evidence is sufficient to take such questions to the jury.

Instruction No. 4 specifically submitted to the jury the question of Long's drunkenness or intoxication, which we think was correct to that extent. Instructions

Nos. 3 and 4 might well be combined by submitting to the jury all the alleged violations of law, as indicated above. All questions not determined in this opinion are reserved.

For the reasons stated, the judgment is reversed and remanded for proceedings consistent with this opinion.

Whole Court sitting.