**CLAY v. SAMMONS et al. (two cases).**

Court of Appeals of Kentucky.
March 16, 1951.

William A. Johnson, Paintsville, for appellant.

Howard & Combs, Prestonsburg, Wheeler & Wheeler, Paintsville, for appellees.

STEWART, Justice.

These appeals are from judgments rendered in two actions which were consolidated in the Johnson Circuit Court for the purpose of trial. In the first case, Irvin Clay sued Tom Sammons and Verna Sammons for $20,000 for permanent injuries received by him and for $600 damages to his automobile, or for a total of $20,600. In the other case, Irvin Clay, as administrator of the estate of Alafair Clay, deceased, sued Tom Sammons and Verna Sammons for $25,000 for the wrongful death of his wife, Alafair Clay. Both actions arose out of an accident involving a Chevrolet pick-up truck owned and operated by Irvin Clay and a Ford sedan automobile owned by Tom Sammons and driven by his wife, Verna Sammons, which occurred on Sunday morning, December 7, 1947, at about the hour of 11:00 a. m., on the Paintsville-Inez highway at Meally, Kentucky, approximately 3 miles east of Paintsville in Johnson County. Tom Sammons was made a party defendant below in both actions under the "family purpose doctrine." At the conclusion of the trial, the jury returned a verdict in favor of Tom Sammons and Verna Sammons in each action.

In this appeal from the judgments adverse to him, appellant advances four grounds for a reversal of the same, to-wit:

(1) The court erred in permitting appellees to introduce incompetent and irrelevant testimony in their behalf.

(2) The verdict of the jury was erroneous, contrary to the law, not sustained by, and flagrantly against, the evidence, and was rendered by reason of passion and prejudice.

(3) The instructions to the jury were erroneous in that they failed to state clearly and impartially the law applicable to the cases.

(4) The arbitrary and unjustified action of the circuit court in setting aside the swearing of the jury continuing these actions at the first trial was an abuse of judicial discretion and caused prejudicial injury to appellant.

Appellant testified that, on the occasion of the accident, he, together with his wife, Alafair Clay, and his daughter, Mrs. Herma Clay Preston, were in the cab of his 1937 Chevrolet pick-up truck proceeding west-

wardly towards Paintsville. Ralph Castle, a hitch hiker, whom Clay had picked up at Offut, Kentucky, was riding in the bed of the truck. Clay was driving and, on reaching Meally, about 3 miles east of Paintsville, as he approached the home of Tom and Verna Sammons, situated on the south side of the highway and on appellant's left hand side, he first saw the Sammons' automobile 375 feet away, with Verna Sammons in it, parked off the road in front of their home, headed in the same direction that appellant was traveling. Clay says he. was on his right hand side of the highway operating his truck at a rate of speed of between 25 and 27 miles per hour at the time. When he came to a point within 30 or 40 feet of the place where the Sammons' car was parked, Mrs. Sammons, suddenly and without any warning signal, came on to and across the highway directly into the path of his vehicle. Appellant sounded his horn, applied his brakes and swerved his truck sharply to his left in an effort to avoid a collision. The road had a black top surface and was wet and slippery from rain. His truck began to skid, causing him to lose control of it. He skidded past the sedan to the left on the pavement, then back across the highway directly in front of the Sammons' car, and finally ran off the highway, landing on the right hand side of a deep drain. When the movement of the truck had ceased, it was turned on its left side, headed in the opposite direction from which it had been originally traveling. As a result of the accident, appellant sustained serious and painful injuries, including the permanent dislocation of his left shoulder. Appellant's wife received fatal internal injuries from which she died on December 9, 1947, two days after the accident. The sedan was uninjured, as it did not make contact with the truck, but appellant's truck was wrecked. The evidence of Herma Clay Preston, Clay's daughter, and Ralph Castle, the hitchhiker, agreed substantially with that given by Clay himself at the trial.

Mrs. Sammons testified that, just before advancing out onto the highway, she looked behind her through the back window of her automobile, and then, seeing no one, pulled in low gear across the road onto the right side. Just as she did so, her attention was called to Clay's truck by its honking. He was approaching her fast, she said. At a point 180 feet from where she had started he cut out from behind her and went by her on the hard surface. As he passed her, he lost control of his truck, as the road was slick, then he cut right back in front of her. She applied her brakes, but Clay's truck skidded around her. Three witnesses were introduced in behalf of appellees who testified that appellant's truck was traveling from 30 to 40 miles per hour at the time of the accident; and that they saw the truck pass the sedan at a point from 135 to 150 feet from the location at which Mrs. Sammons testified her car had been parked just prior to the accident. None of these witnesses saw the Sammons' car pull out onto the highway, but each observed the Clay truck just before or at the instant it passed the sedan.

The first error complained of by appellant is that the trial court permitted appellees to introduce three witnesses, namely, James E. Davis, Roma Ponix and Norton Daniel, who testified as to the speed appellant's truck was traveling through Williamsport, Kentucky, some two and a half miles from the scene of the wreck. It was error to allow evidence on the manner of his driving beyond the immediate scene of the accident, contends appellant, citing the rule of law laid down in Cornett v. Com., 282 Ky. 322, 138 S.W.2d 492, and Stevens v. Potter, 209 Ky. 705, 273 S.W. 470. The witnesses just named testified, in substance, that they were in the act of getting into the Davis car in front of the latter's home when Clay passed, traveling from 40 to 50 miles per hour. The truck then went around a curve out of sight. They immediately followed in the same direction, going up and down a mountain and around curves, at a speed of from 40 to 50 miles per hour, but they did not see the Clay truck again until they arrived at the scene of the wreck.

Appellees, in insisting that this testimony was competent, argue that the reckless and speedy driving by Clay had been placed

in issue by their pleadings and that this particular evidence was also admissible, because it contradicted appellant who testified at the trial that he had driven all the way from his home to the place of the accident at a reasonable rate of speed. In addition, appellees pled imputed negligence, contributory negligence and assumption of risk on the part of Mrs. Alafair Clay as defenses to the action of her administrator against them. These pleas were predicated upon facts to be shown at the trial, they state, that Clay had been driving at a reckless rate of speed for some time and for several miles back of the place of accident and that he continued to so operate his car in the same manner until it wrecked, without any warning or protest from Mrs. Clay or any request from her that she be allowed to get out of the truck.

Testimony was in fact produced at the trial that Clay had been driving and had continued to drive at a dangerous rate of speed over a wet, slippery road. He admitted in his testimony that his wife made no protest at any time against his manner of driving and made no request that he slow down his truck. This question was asked Clay: "And she said nothing to you on the entire route about your driving?" His answer was: "No, sir, she didn't say anything at all."

■ It seems to us, and we so hold, that the testimony in question, addressed as it was to legitimate issues raised by the pleadings, had such logical relationship to the other evidence introduced under the circumstances above set forth as to make it clearly competent. If Alafair Clay, in addition, had knowledge of the facts constituting her husband's negligence for a sufficient time prior to the accident to have enabled her to take precautionary steps within time to have avoided the collision, and she failed to do so, then his negligence may be imputed to her. Cox's Adm'r. v. Cincinnati, N. O. & T. P. Ry. Co., 238 Ky. 312, 37 S.W.2d 859. The Stevens and the Cornett cases apply to different sets of facts from the instant cases and are distinguishable from them.

The next error urged by appellant is directed at the testimony of Ballard Wallen who was called as a witness for appellees. Over the objection of counsel for appellant, he was permitted to testify that he heard Ralph Castle make the following remark in his presence: "He said if he hadn't been driving so damn fast it never would have happened. That is just what he said."

The second "he" referred to was Clay. The circuit court ruled this statement competent and gave the following reason for allowing this testimony to be admitted: "Now the jury will receive that not as substantive testimony, but as affecting the creditability of the testimony of the witness, Ralph Castle, if any effect it does have upon the creditability of said witness."

■ By agreement Ralph Castle's testimony had been taken by deposition prior to the trial, because he worked in Pike county and would be absent, and was, in fact, absent at the time of the trial of these actions. There was no foundation laid in Castle's deposition or at any time during the trial for impeaching or contradicting him in the manner just described as required by Section 598 of the Civil Code of Practice. Therefore Wallen's testimony as recited herein was improper and prejudicial to appellant's substantial rights and constitutes a reversible error. John Hancock Mut. Life Ins. Co. v. Long, 285 Ky. 757, 149 S.W.2d 510; Clay v. Goldstein, 102 S. W. 319, 31 Ky.Law Rep. 390; Murphy v. May, 9 Bush 33.

It will serve no good purpose to pass upon appellant's threefold charge that the verdict of the jury was contrary to the law, was not sustained by and flagrantly against the evidence, and was dictated by reason of passion and prejudice. As these actions will be retried by the court below, we shall not anticipate that any of the alleged errors complained of by appellant on the above grounds will affect the next verdict.

■ Appellant next contends that the trial court erred in giving Instructions No. 1 and No. 3 to the jury. Instruction No. 1, defining the duty of Mrs. Sammons, at the time she was operating the car, did not

include the statutory · obligation imposed upon her by KRS 189.330(6) as follows: "The driver of a vehicle about to' enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on the highway." Nor did it contain the following requirement of law as to her duty set forth in KRS 189.440, to-wit: "No person shall start a vehicle that is stopped or parked unless and until the movement can be made with reasonable safety." Since there must be a new trial of these actions, we think the sections of law above quoted should be appropriately incorporated into Instruction No. 1, if the testimony at the next trial is factually similar to that developed in the cases at bar.

The issue embraced in Instruction No. 3, as we have pointed out, was raised by the pleadings. The evidence produced at the trial tended to show that Clay had been driving for some time prior to the accident over a slippery road at a dangerous rate of speed. This, coupled with his admission that his wife, Alafair Clay, made no protest against his so driving, or voiced no request that he slow down, fully justified the giving of this instruction. If the facts in question are materially the same at a new trial of these actions, this same instruction will be proper. Stanley's Instruction to Juries, Sec. 132, p. 163. New York Indemnity Co. v. Ewen, 221 Ky. 114, 298 S.W. 182.

As there must be a trial de novo of these cases, we deem it unnecessary to discuss in detail the final error urged by appellant. We have carefully gone into the record on this point, and, under the circumstances, we do not believe the lower court abused its discretion in discharging the jury and continuing these cases during the October, 1948, term of circuit court.

Wherefore, the judgments are reversed with directions that they be set aside and that appellant be granted a new trial in each of the actions. The actions may be tried together under the original order of consolidation and the trial shall be conducted in a manner not inconsistent with this opinion.